UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| BRIAN NOE,<br>23824 Pond View Dr.<br>Plainfield, IL 60585<br><br>and<br><br>EILEEN PRUITT<br>2818 Bauer Road,<br>North Aurora, IL 60542,<br><br>on behalf of<br>themselves and all other similarly situated,<br><br>    Plaintiffs,<br>-against-<br><br>SMART MORTGAGE CENTERS, INC.<br>4003 Plainfield Naperville Road,<br>Naperville, IL 60564<br><br>and<br><br>RICHARD BIRK,<br>4003 Plainfield Naperville Road<br>Naperville, IL 60564<br><br>and<br><br>BRIAN BIRK,<br>4003 Plainfield Naperville Road<br>Naperville, IL 60564<br><br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No.: 1:21-cv-01668 |

## FIRST AMENDED COLLECTIVE/CLASS ACTION COMPLAINT

Plaintiffs, by their undersigned attorneys, as and for their First Amended Collective and

Class Act Complaint, allege as follows:

## NATURE OF ACTION

1.      This civil action is brought by the above-named individual plaintiffs who seek redress for the Defendants' violations of their rights under the Fair Labor Standards Act, 29 U.S.C. § 201, et. seq. as well as Illinois state wage payment laws, by knowingly misclassifying their inside sales loan officers as exempt employees and failing to pay them required minimum and overtime wage.  This action is brought as a nationwide collective action pursuant to 29 U.S.C. §216(b) alleging violations of the Fair Labor Standards Act, and as a state-law class action under Fed. R. Civ. P. 23(b)(3).

2.      Plaintiffs  Brian Noe and Eileen Pruitt (collectively referred to as "Plaintiffs" or the "Loan Officer Plaintiffs") were employed by Defendants as inside sales loan officers.  Defendants, Smart Mortgage Centers, Inc., Richard Birk and Brian Birk (collectively hereinafter referred to as "Defendants"), implemented a common scheme where the Loan Officer Plaintiffs and others similarly situated, despite being inside loan officers not qualified under any recognized exemption, were not paid for all hours worked, and were not paid overtime for hours worked in excess of forty (40) hours in a given workweek, in violation of the Fair Labor Standards Act ("FLSA") and the Illinois Wage and Hour Laws.

3.      Additionally, Defendants consistently and improperly, and through various means, improperly deducted its own business costs from loan officers' commissions requiring loan officers to pay for the Company's internal staffing needs, as well as improper deductions from gross commissions for alleged loan officer errors.

4.      Defendants would also improperly make deductions from loan officers' gross commissions based upon alleged errors in loan processing and would also withhold up to $1000 from Loan Officers' paychecks in the event of the making of untimely database entries.  These

deduction violate the regulations promulgated by the U.S. Department of Housing and Urban Development and amount to improper deduction under the Illinois Wage Payment Collection Act.

5. The similarly situated individuals whom the Loan Officer Plaintiffs seek to represent are comprised of other inside sales loan officers employed by Defendant Smart Mortgage Centers, Inc.'s, who were exclusively paid commission based compensation, to whom Defendants knowingly and willfully failed to pay their wages in accordance with applicable federal and state laws. The Loan Officer Plaintiffs claims include, but are not necessarily limited to, claims for minimum wage, overtime wages, and commissions that were improperly underpaid due to Defendants' common scheme and practice of improperly deducting business costs from commissions in violation of federal and state laws.

6. The Loan Officer Plaintiffs seek redress on behalf of themselves and all others similarly situated. The Loan Officer Plaintiffs bring this action as a collective action pursuant to 29 U.S.C. §216(b) for violations of the FLSA and a state law class action under Fed. R. Civ. P. 23(b)(3) and for violations of Illinois State Wage Law.

## THE PARTIES

7. Plaintiff Brian Noe is a citizen of the State of Illinois with a residential address of 23824 Pond View Drive, Plainfield IL 60585. Defendants employed Plaintiff Noe as an inside sales loan officer in this district during the relevant period. Throughout this period, Plaintiff Noe's primary job responsibility was to sell residential mortgage loans to borrowers from inside Defendants' offices or home office. Plaintiff Noe routinely worked more than 40 hours per week. However, Defendants paid him on a commission only basis, which did not include overtime wages for hours worked beyond 40 in a week and also resulted in payment below minimum wage in certain workweeks.

8.     Plaintiff Eileen Pruitt is a citizen of the State of Illinois with a residential address of 2818 Bauer Road, North Aurora, IL 60542. Defendants employed Plaintiff Pruitt as an inside sales Loan Officer in this district during the relevant period. Throughout this period, Plaintiff Pruitt's primary job responsibility was to sell residential mortgage loans to borrowers from inside Defendants' offices or her home office. Plaintiff Pruitt routinely worked more than 40 hours per week. However, Defendants paid her on a commission only basis, which did not include overtime wages for hours worked beyond 40 in a week and also resulted in payment below minimum wage in certain workweeks.

9.     Defendant Smart Mortgage Centers, Inc. was and still is a corporation doing business in the State of Illinois with principal offices located at 4003 Plainfield Naperville Road, Naperville, IL 60564. Smart Mortgage Centers, Inc. provides mortgage banking services to its customers from its corporate offices in the State of Illinois. At all relevant times, it has been "employer" as defined by the FLSA as well as the state wage laws of the State of Illinois.

10.    Defendant Richard Birk ("R. Birk") is a resident of Illinois and is the President of Smart Mortgage Centers, Inc with principal offices located at 4003 Plainfield Naperville Road, Naperville, IL 60564. Defendant R. Birk, at all relevant times, supervised and had authority and power to control wages and hours, and to hire and fire the putative class members and named plaintiffs. Defendant R. Birk was aware of, implemented, and enforced the policies and practices complained of herein.

11.    Defendant Brian Birk ("B. Birk") is a resident of Illinois and holds the title of Vice President of Smart Mortgage Centers, Inc. with principal offices located at 4003 Plainfield Naperville Road, Naperville, IL 60564. Defendant B. Birk supervised and had authority and power to control wages and hours, and to hire and fire the putative class members and named plaintiffs.

4

Defendant B. Birk was aware of, implemented, and enforced the policies and practices complained of herein.

## JURISDICTION AND VENUE

12.     Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), this case arising under the laws of the United States, 28 U.S.C. § 1337, this action arising under Acts of Congress regulating commerce, and 28 U.S.C. § 1367. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction), because these claims arise from the same occurrence or transaction and are so related to Plaintiffs' FLSA claim as to form part of the same case or controversy. The Court has personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4 (k)(1), in that Defendants have sufficient contact with the state of Illinois as they reside in this district and regularly conduct business within the state. *See* 735 ILCS 5/2-209.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) as Defendants reside and are headquartered in this district, have significant business contacts within this District, and substantially all of the acts and omissions giving rise to Plaintiffs' claims occurred within this District.

## GENERAL FACTUAL ALLEGATIONS

14.     This action arises out of Defendants' consistent practice of knowingly and willfully refusing to pay its inside sales loan officers minimum wages for all hours worked; for denying inside sales loan officers overtime pay for all hours worked in excess of forty hours each workweek; for deliberately refusing to allow inside sales loan officers to be compensated in any manner for hours worked in excess of 40 hours in one week; for failing to pay loan officers the entirety of all compensation that was owed; and for implementing a scheme wherein Defendants

5

improperly deducted its own business costs from Employee's commissions in violation of the FLSA, the Illinois Minimum Wage Act and the Illinois Wage Payment Collection Act.

15. At all times relevant, the Loan Officer Plaintiffs, who acted as inside loan officers were non-exempt employees of Defendant Smart Mortgage Centers, Inc., as defined by the FLSA and Illinois State Wage-Hour laws.

16. Plaintiff Noe was employed by Defendants between October 29, 2013 and December 20, 2019.

17. Plaintiff Pruitt was employed by Defendants between May 6, 2019 and Feb 2, 2020.

18. At all times relevant, Smart Mortgage Centers, Inc. was an employer, as defined by the FLSA, the Illinois Minimum Wage Law and the Illinois Wage Payment and Collection Act in that, among other things, it controlled, directed and/or participated in the creation and maintenance of Smart Mortgage Centers, Inc.'s Wage-Hour policies and practices; was involved in decisions pertaining to employees' compensation; and had a material role in the compensation practices, decisions, policies and actions, including but not limited to those complained of herein.

19. At all times relevant, R. Birk, the President of Smart Mortgage Centers, Inc. was an employer, as defined by the FLSA, Illinois Minimum Wage Law, and the Illinois Wage Payment and Collection Act in that, among other things, he controlled, directed and/or participated in the creation and maintenance of Defendants' Wage-Hour policies and practices; was involved in decisions pertaining to employees' compensation; and had a material role in the compensation practices, decisions, policies and actions, including but not limited to those complained of herein.

20. At all times relevant, B. Birk, the Vice President of Smart Mortgage Centers, Inc.

was an employer, as defined by the FLSA, Illinois Minimum Wage Law, and the Illinois Wage Payment and Collection Act in that, among other things, she controlled, directed and/or participated in the creation and maintenance of Defendants' Wage-Hour policies and practices; was involved in decisions pertaining to employees' compensation; and had a material role in the compensation practices, decisions, policies and actions, including but not limited to those complained of herein.

21.     Defendant Smart Mortgage Centers is engaged in interstate commerce as that term is defined in the FLSA.

22.     At all times relevant, Loan Officer Plaintiffs, in their capacity as employees of Defendants, were engaged in interstate commerce.

23.     During the course of employment with Defendant Smart Mortgage Centers, Inc. inside sales loan officers, such as Plaintiffs Noe and Pruitt were not exempt from minimum wage and/or overtime wages. However, the Loan Officer Plaintiffs were paid commissions only (one hundred percent commission-based compensation), did not receive minimum wages for all hours worked, and did not receive overtime compensation as required by the FLSA and the Illinois Minimum Wage Law.

24.     If Plaintiffs did not earn commission in any given week, they were not otherwise paid anything for the hours worked that week; clearly, resulting in wages not only below minimum wage but of zero some weeks.

25.     For example, when Plaintiffs started, they were not paid anything until they began to generate commissions. This resulted in weeks at the beginning of Plaintiffs employment where they were not paid anything, or were paid a nominal amount, for hours worked causing their wages to fall below minimum wage.

7

26. Also, during numerous weeks during the first quarter of the relevant fiscal years, Plaintiffs were either paid nothing, or a nominal amount below minimum wage, for multiple weeks.

27. Similarly, during numerous weeks around the holidays and in the late summer, Plaintiffs were paid nothing, or a nominal amount below minimum wage, for multiple weeks.

28. Plaintiffs and others similarly situated were not primarily responsible for performing work directly related to the management or Defendants' general business operations, were not primarily responsible for the exercise of discretion and independent judgment with respect to matters of significance to Defendants' business operations and regularly and customarily performed their primary duty from inside an office.

29. In addition, Plaintiffs were not guaranteed a salary of $684/week, nor were they working in a capacity as outside sales as defined by the Fair Labor Standards Act.

30. Throughout the relevant period, Defendants unilaterally dictated and controlled the terms of Plaintiffs' and the putative collective/class members' employment, including the nature of their work, the wages they received and their classification as employees exempt from federal and state overtime requirements. Throughout the relevant period, Defendants also unilaterally dictated and controlled the common policies governing the Plaintiffs' and the Collective/Class members' employment, including the manner in which their wages were calculated and their hours were tracked.

31. Loan Officer Plaintiffs and others similarly situated worked from both the Smart Mortgage Centers, Inc.'s office and were also required to work from home, and were set up by Defendants with VPNs at their homes so that Loan Officer Plaintiffs could work remotely. As

such, Loan Officers regularly conducted employers' business from their homes, which became a place of business for the employer as defined under the FLSA.

32.     During the course of all the Loan Officer Plaintiffs' employment with Defendant the Loan Officer Plaintiffs routinely worked in excess of 40 hours per week.

33.     Despite the fact that the Loan Officer Plaintiffs were not exempt employees, Defendant purposefully did not track the Loan Officer Plaintiffs' work hours, on a daily or weekly basis, and did not pay the Loan Officer Plaintiffs the proper wages they were owed, including payment of minimum wage and payment of overtime wages for work in excess of 40 hours per week.

34.     In addition, in calculating payments on the Loan Officer Plaintiffs' personal commissions, Defendants improperly deducted costs from commissions in violation of federal and state laws including, but not necessarily limited to, the following:

     a. Defendants would assess a per-file fee between $130 and $395 from loan officer compensation to pay for its own internal staff;

     b. Defendants would charge back loan officers for alleged billing errors (i.e, failing to charge customers for credit fees, verification fees, UPS fees, questionnaire fees, etc.) and deduct these charge backs from commissions;

     c. Defendants would charge back loan officers for alleged processing errors or the failure to turn in a "clean loan" and deduct certain amounts from payroll; and,

     d. Assessing up to $1000 penalties, or withholdings, for improper database entries.

9

35. Under the HUD Single Family Handbook, Section I.A.6.G, a lender is required to pay all of its own operating expenses – those expenses may not be paid by its employees.

36. Further under the Dodd Frank Act and Regulation Z, a lender may not compensate loan officers based upon the terms or conditions of the loans they originate. As set forth in the loan origination rules promulgated by the Consumer Financial Protection Bureau and the United States Federal Reserve, a lender violates Regulation Z by reducing commissions for errors on loan files and for fees and costs that are not charged to a borrower on a loan. Nonetheless, in violation of federal lending laws and regulations, Defendants reduced loan officers' commission based upon errors, fees, and costs associated with their loan files and required them to pay for the costs of internal staff.

37. Defendants R. Birk and B. Birk were, at all relevant times, responsible for and had the power to control the wages, hours and working conditions of Plaintiffs and were aware of all issues surrounding Plaintiffs' compensation, and improper exempt employee designations, and had the ability to control and/or impact such compensation, and also controlled the process by which improper penalties were assessed and revenues were withheld in violation of federal lending laws.

38. Upon information and belief, Defendants R. Birk and B. Birk, in their representative capacity knowingly permitted and/or intentionally acted to deceive and deprive Plaintiffs of their rightful wages and compensation.

39. Plaintiffs are entitled to actual and liquidated damages for Defendants' actions.

**COLLECTIVE ACTION ALLEGATIONS OF THE**
**FLSA CLASS**

40. Plaintiffs reassert and re-allege the allegations set forth in each of the paragraphs above.

41. Plaintiffs seek to maintain this suit as a collective action pursuant to 29 U.S.C

10

§216(b) on behalf of themselves and the following class of persons: All inside loan officers who worked for Defendants at any time during the statutory period who give their consent in writing to become party plaintiffs ("FLSA Class").

42. All putative members of the class are similarly situated because, *inter alia*, they have all had similar duties; performed similar tasks; had been improperly paid on a commissions-only basis to improperly designate them as exempt employees; were entitled under the FLSA to be paid for all hours worked and paid overtime for all work in excess of 40 hours per week; and had such rights undermined and negated by Defendants' unlawful practices and policies.

43. Defendants have encouraged, permitted, and required the Loan Officer Plaintiffs and other members of the FLSA Class to work without pay, and without overtime compensation.

44. Defendants have known that Plaintiffs and other members of the FLSA Class have performed unpaid work and been deprived of overtime compensation. Nonetheless, Defendants have operated under a scheme to deny the Loan Officer Plaintiffs and other members of the FLSA Class all compensation for work in excess of 40 hours in a week.

45. Defendants' conduct, as alleged herein, was willful and has caused significant damage to Plaintiffs and other members of the FLSA Class.

## COUNT I
### FAILURE TO PAY MINIMUM WAGES AND OVERTIME WAGES UNDER THE FLSA
#### (By The Loan Officer Plaintiffs Against All Defendants)

46. The Loan Officer Plaintiffs allege and incorporate by reference all the above allegations.

47. Under the FLSA, the Loan Officer Plaintiffs and those similarly situated

11

(hereinafter referred to as "The FLSA Class") were entitled to be paid minimum wages. The FLSA Class was also entitled to be paid at the overtime rate by Defendants for each hour worked in excess of 40 hours each workweek.

48.     The overtime rate is computed by multiplying 1.5 times an employee's regular hourly rate, which includes all nondiscretionary compensation paid to employees.

49.     Defendants failed to compensate The FLSA Class per the FLSA minimum wage requirements for the hours that they worked for Defendants.

50.     Defendants failed to pay Plaintiffs for their hours worked and/or one- and one-half regular rate of pay for hours worked above forty (40) in numerous weeks as Defendants did not pay Plaintiffs based on their hours worked but, on a commission-only basis. Meaning, any weeks where Plaintiffs did not earn commission, they were not otherwise paid for their work.

51.     Defendants failure to pay Plaintiffs for the hours worked on numerous occasions resulted in Plaintiffs earning nothing or a nominal amount in weeks where Plaintiffs did not earn commission. Thus, Plaintiffs wages fell below minimum wage during these weeks.

52.     Defendants also failed to compensate The FLSA Class at the overtime rate for work performed in excess of 40 hours per week in violation of the FLSA.

53.     Defendants' violation of the FLSA for failure to pay The FLSA Class minimum and overtime wages was willful and deliberate.

54.     Upon information and belief, Defendants' practice as described above was not approved in writing by the United States Department of Labor.

55.     Upon information and belief, Defendants' practices were not based upon Defendants' review of any policy or publication of the United States Department of Labor.

56.     Due to Defendants' violation of the FLSA, The FLSA Class is entitled to recover

from Defendants their unpaid compensation, liquidated damages, reasonable attorneys' fees, and the costs of this action, pursuant to 29 U.S.C. § 216(b).

STATE-WIDE CLASS ALLEGATIONS
PURSUANT TO ILLINOIS MINIMUM WAGE ACT AND ILLINOIS
WAGE PAYMENT COLLECTION ACT

57.     Plaintiffs also seek to maintain this action as a class action, pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of themselves individually and on behalf of all other members of the Class who, during the relevant statute of limitations period, have worked for Defendants and who have been aggrieved, with respect to the claims plead in this Complain for violations of the Illinois Minimum Wage Act and the Illinois Wage Payment and Collection Act for Defendants' failure to pay minimum wages, overtime, and for improperly deducting business costs and penalties from loan officers' pay.

58.     Fed. R. Civ. P.23(b)(3) provides that a cause of action may be maintained as a class action if:

a) The class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

b) There are questions of law or fact common to the class which predominate over any questions affecting only individual members;

c) The claims or defenses of the representative parties are typical of the claims or defenses to the class;

d) The representative parties will fairly and adequately protect the interests of the class; and,

e) A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Class Definitions

54.     Plaintiffs seek certification of  a class defined as: All loan officers of Smart Mortgage employed in Illinois in the three (3) years preceding the filing of this case.

13

Numerosity

55.      Plaintiffs satisfy the numerosity requirements as the proposed classes consists of potentially hundreds of class members. The proposed class includes all loan officers employed by Defendants in Illinois that were not paid minimum wages and overtime wages, and were subjected to Defendants practice of improperly deducting costs and penalties from commissions. Since Defendants have numerous employees that were injured by Defendants actions the classes will likely include more than 50 members. The proposed classes can be identified and located using Defendants' payroll and personnel records. Therefore, the classes are so numerous that the joinder of all members is impracticable. Class members may be informed of the pendency of this action by direct mail based upon and/or published and broadcast notice.

Common Questions of Fact or Law

56.      There are questions of fact and law common to each class that predominate over any questions affecting only individual members. The common questions of law and fact arising from Defendants' actions include, without limitation, the following:

a) Whether the class members qualified for exempt status;

b) Whether loan officers share similar job duties;

c) Whether Defendants paid loan officers for all hours worked;

d) Whether Defendants paid loan officers overtime;

e)   Whether Plaintiffs regularly worked in excess of 40 hours per week;

f) Whether Defendants improperly reduced Plaintiff's commissions for alleged errors and business expenses;

h) Whether Defendants' practices violated the overtime and minimum wage provisions of the Illinois Wage and Hour Laws;

i) Whether Defendants' failure to pay minimum wages and overtime has been willful;

14

j) Whether the deductions from commissions violated the Illinois Wage Payment Collection Act;

57.     The questions set forth above predominate over any questions affecting only individual persons and a class action is superior with respect to consideration of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the controversy.

## Typicality

58.     Loan Officer Plaintiffs' claims are typical of the claims of the members of the proposed Class. Loan Officer Plaintiffs suffered similar injuries as those suffered by other members of the respective class they seek to represent as a result of Defendants' illegal activities as described herein.

## Adequacy

59.     Loan Officer Plaintiffs are adequate representatives of the classes they seek to represent because they are members of such classes, and their interests do not conflict with the interests of the members of the classes they seek to represent.  The interests of the class members will be fairly and adequately protected by Loan Officer Plaintiffs and their designated counsel. Loan Officer Plaintiffs have hired competent attorneys who are experienced in class-action litigation of this type and who are committed to prosecuting this action.

## Superiority

60.     A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class-action treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of

effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member may be relatively small, the expense and burden of individual litigation would make it difficult to bring individual claims. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair, or impede the ability of class members to protect their interests.

**COUNT II**
**VIOLATION OF THE ILLINOIS MINIMUM WAGE LAW**
**FAILURE TO PAY MINIMUM WAGE**
(By Loan Officer Plaintiffs On Behalf of the Class Against All Defendants)

61. Loan Officer Plaintiffs repeat and re-allege the allegations set forth in each of the paragraphs above.

62. The members of the Class were entitled to minimum wages for the work they performed for Defendant Smart Mortgage Centers, Inc.

63. Defendants failed to pay the members of the Class minimum wages and overtime, in violation of Illinois' Minimum Wage Law, 820 ILCS 105/1 et seq.

64. Illinois' Minimum Wage Law § 820 ILCS 105/3, defines an employer as follows: ""Employer" includes any individual, partnership, association, corporation, limited liability company, business trust, governmental or quasi-governmental body, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, for which one or more persons are gainfully employed on some day within a calendar year." As such, Defendant meets the definition of an employer pursuant to Illinois' Minimum Wage Law.

65. Additionally, Defendants R. Birk and B. Birk are also considered Employers pursuant to § 820 ILCS 105/3, and are subject to liability for their acts against the members of the Class.

16

66.     By the above-alleged conduct, Defendants failed to pay the members of the Class minimum wages and overtime, as required by the Illinois law.

67.     Defendants failed to pay Plaintiffs for their hours worked and/or one- and one-half regular rate of pay for hours worked above forty (40) in numerous weeks as Defendants did not pay Plaintiffs based on their hours worked but, on a commission-only basis. Meaning, any weeks where Plaintiffs did not earn commission, they were not otherwise paid for their work and their wages fell below minimum wage in many of those weeks.

68.     The members of the Class were not exempt from the payment of these wages pursuant to Illinois wage hour laws.

69.     Defendants acted willfully in violating Illinois Law and the members of the Class were damaged by Defendants' wrongful conduct as alleged herein.

**COUNT III**
**VIOLATION OF THE ILLINOIS MINIMUM WAGE LAW**
**FAILURE TO PAY OVERTIME WAGES**
(By The Loan Officer Plaintiffs On Behalf of the Class Against All Defendants)

70.     Loan Officer Plaintiffs repeat and re-allege the allegations set forth in each of the paragraphs.

71.     The Illinois Wage Payment and Collection Act provides that unless exempt, an employee must be paid  by an employer overtime wages equal to 1.5 times the employee's regular rate of pay, for all hours worked in excess of 40 per week.

72.     Illinois' Minimum Wage Law § 820 ILCS 105/3, defines an employer as follows: ""Employer" includes any individual, partnership, association, corporation, limited liability company, business trust, governmental or quasi-governmental body, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, for which one or more persons are gainfully employed on some day within a calendar year." As such,

17

Defendant Smart Mortgage Centers, Inc. meets the definition of an employer pursuant to Illinois' Minimum Wage Law.

73. Additionally, Defendants R. Birk and B. Birk are also considered Employers pursuant to § 820 ILCS 105/3, and are subject to liability for their acts against Plaintiffs.

74. By the above-alleged conduct, Defendants failed to pay the members of the Class compensation, including overtime compensation, as required by the Illinois law.

75. The members of the Class were not exempt from the payment of these wages pursuant to Illinois wage hour laws.

76. Defendants acted willfully in violating Illinois Law and the members of Subclass I were damaged by Defendants' wrongful conduct as alleged herein.

**COUNT IV**
**VIOLATION OF THE ILLINOIS WAGE PAYMENT COLLECTION ACT**
**FOR IMPROPER DEDUCTIONS**

(By The Loan Officer Plaintiffs On Behalf Of the Class Against All Defendants)

77. Plaintiffs repeat and re-allege the allegations set forth in each of the paragraphs.

78. The Illinois Wage Payment and Collection Act provides "any employee not timely paid wages, final compensation, or wage supplements by his or her employer as required by this Act shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees." *See* Illinois' Wage Payment and Collection Act § 820 ILCS 115/14.

78. Illinois Law provides that Employers may only make deductions from Employees' pay for deductions required by law, deductions for the employees' benefit, and with the Employees' express written consent given freely at the time the deduction is made.

79. Further, each deduction must be accompanied by an itemized statement of the deductions for each pay period.

80. Without obtaining Plaintiff's voluntary consent at the time of the deductions, Defendants improperly subtracted business costs, administrative costs, penalties and uncharged fees from loan officers' commissions. These deductions were not required by law or for the employees' benefit and no itemized statement was provided accounting for the deductions. 81. As such, the members of the Class were subject to illegal and unlawful deductions form their compensation.

82. Defendants acted willfully in violating Illinois Law and the members of the Class were damaged by Defendants' wrongful conduct as alleged herein.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that this Court grant the following relief:

1. Award all actual damages suffered by Plaintiffs;

2. Order the disgorgement of all monies improperly obtained by Defendants;

3. Enter an order declaring that Defendants willfully violated the minimum wage and overtime provisions of the FLSA;

4. Award Plaintiffs damages in the amount of minimum wages and overtime wages required by the FLSA improperly denied them by Defendants' actions;

5. Award Plaintiffs damages in the amount of improper deductions from compensation in violation of the Illinois Wage Payment and Collection Act;

6. Award Plaintiffs liquidated damages equal to Plaintiffs' unpaid minimum wages and overtime compensation under the FLSA;

7. Award Plaintiffs liquidated damages under Illinois Wage Payment and Collection Act;

8. Award Plaintiffs punitive damages;

9. Award Plaintiffs prejudgment interest;

10. Award Plaintiffs post-judgment interest;

11. Award Plaintiffs reasonable attorneys' fees as well as the costs of this action;

12. Award such other and further relief as this Court deems necessary and proper, including but not limited to appropriate injunctive relief for those collective and class members still employed by Defendants against any and all ongoing unlawful employment practices.

## DEMAND FOR A TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all issues raised by

the Complaint.

Respectfully submitted,

*Attorneys for Plaintiffs, Brian Noe and
Eileen Pruitt*

By: /s/ Nathan A. Hall_____

Mark E. Christensen
Nathan A. Hall
Branden Gregory
CHRISTENSEN HSU SIPES, LLP
224 South Michigan Avenue, Suite 1300
Chicago, IL 60604
Tel: (312) 634-1014
Email: mark@chs.law
      nate@chs.law
      branden@chs.law

Ari Karen, Esq.
Louis D. Tambaro, Esq.
OFFIT KURMAN, P.A.
7501 Wisconsin Avenue, Suite 1000W
Wisconsin, MD 20814
Telephone: 301-575-0340
*Admitted Pro Hac Vice*

Date: November 4, 2021

4894-5233-5105, v. 2

21