UNITED STATES DISTRICT
COURT NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | |
|---|---|
| BRIAN NOE and EILEEN PRUITT<br><br>on behalf of<br>themselves and all other similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>SMART MORTGAGE CENTERS, INC.,<br>RICHARD BIRK, and BRIAN BIRK,<br><br>Defendants. | Case No.: 1:21-cv-01668 |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

  Plaintiff Brian Noe and Eileen Pruitt, as well as Opt-In Plaintiffs (together "Plaintiffs"), by their undersigned counsel, move for summary judgment against Defendants Richard Birk, Brian Birk (together the "Birks"), and Smart Mortgage Centers, Inc. ("SMC" or the "Company") (together "Defendants") on all counts of Plaintiffs' First Amended Complaint ("Complaint"). Plaintiffs can successfully demonstrate that summary judgment is warranted as to their claims for minimum wage, overtime, and improper deductions based on the undisputed material facts in the record developed in this litigation. The record reflects that Defendants engaged in a systematic misclassification of loan officers as "outside sales employees," when Company expectations reflect those of an inside, non-exempt sales employee. Further, Plaintiffs each were subject to improper wage payment through a failure to pay minimum wages, failure to provide overtime wages, and illegal deductions from loan officer pay. Accordingly, Plaintiffs should be granted summary judgment on all counts of their Complaint.

1

## FACTUAL BACKGROUND

For brevity, Plaintiffs refer this Court to the Rule 56.1(C)(2) Statement of Undisputed Material Facts ("SOF"), ¶1-62, filed in conjunction with this Memorandum.

## STANDARD OF REVIEW

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted). When the movant has met its burden, the opposing party must "point to evidence that can be put in admissible form at trial, and that, if believed by the fact-finder, could support judgment in his favor." *Marr v. Bank of America, N.A.*, 662 F.3d 963, 966 (7th Cir. 2011)). The non-moving party must affirmatively demonstrate with "*specific facts*" that a genuine issue exists that require trial. *Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003) (emphasis in original)).

## ARGUMENT

Plaintiffs Brian Noe and Eileen Pruitt move for summary judgment against all Defendants on all counts of the Complaint. Moreover, Opt-In Plaintiffs move for summary judgement against Defendants Richard Birk and Brian Birk on all counts of the Complaint. Plaintiffs were subject to

2

improper wage payment through a failure to pay minimum wages, failure to provide overtime wages, and illegal deductions from loan officer pay. Accordingly, Plaintiffs should be granted summary judgment on all counts of their Complaint.

**I.      Plaintiffs Complied with The Court's Standing Order on Summary Judgement Motions**

Pursuant to this Court's Standing Order on Summary Judgment Practice, Plaintiffs advised the Defendants, via a 3-page letter of their basis for summary judgement including: 1) the counts it intended to move on; 2) relevant legal authority; and relevant factual evidence. Counsel for both parties engaged in a meet and confer via telephone and the discussed Plaintiffs' intent to move for summary judgment. Defendants indicated that they believes all material facts are in dispute and that the evidence that Plaintiffs will submit will be inadmissible. When asked for specifics, Defendants did not elaborate further. Plaintiffs asked whether Defendants were aware of any specific factual matter(s) or legal authority that it believes would defeat the motion. Defendants did not provide any.

**II.     Plaintiffs are Entitled to Summary Judgment on their FLSA and State Law Claims for Minimum Wage and Overtime (Count I and Count II and Count III).**

The Court should grant Plaintiff's motion for summary judgment against Defendants for failure to pay minimum wage and overtime wages pursuant to the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL").

Minimum wage and overtime claims brought under the FLSA and IMWL FLSA and IMWL are evaluated using the same analysis. *Curry v. Kraft Foods Glob., Inc.*, No. 10 C 1288, 2012 U.S. Dist. LEXIS 3720 (N.D. Ill. Jan. 12, 2012) (collecting cases); *Driver v. AppleIllinois, LLC*, 890 F. Supp. 2d 1008, 1010 (N.D. Ill. 2012) ("IMWL parallels the FLSA and the same analysis has generally been applied to both statutes.") (citing *Condo v. Sysco Corp.*, 1 F.3d 599, (7th Cir. 1993)).

3

Further, the Illinois Administrative Code provides that the Director of the Illinois Department of Labor, in interpreting the IMWL and regulations thereunder, may look to the United States Department of Labor's regulations and interpretations of the FLSA. Ill. Admin. Code tit. 56, pt. 210.120 (2022). The Code also provides that where there are concurrent state and federal powers, the stricter of the two shall prevail. Ill. Admin. Code tit. 56, pt. 210.100 (2022). "Thus, if there is a difference in the interpretation of the IMWL and FLSA, the IMWL is more favorable to the employee." *AppleIllinois, LLC*, 890 F. Supp. 2d at 1011.

To succeed on summary judgment, a plaintiff must establish the following elements for an FLSA overtime claim: 1) the plaintiff was employed by the defendant; 2) the defendant is engaged in interstate commerce or the plaintiff is otherwise covered by the FLSA; 3) the plaintiff worked in excess of 40-hours in a workweek; and 4) the defendant did not pay the plaintiff overtime wages. *Wiseman v. Tastefully Better*, No. 19-cv-1441, 2021 WL 5321075, at *2 (N.D. Ill. Nov. 16, 2021) (citations omitted). In addition, to prevail under this standard, the employee must prove that the employer had actual or constructive knowledge of the overtime worked. *Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 176-77 (7th Cir. 2011).

To prevail on a minimum-wage claim under the FLSA or IMWL, a plaintiff must prove that they were employed by the defendant and that they were not in fact paid the minimum wage. *Callahan v. City of Chi.*, 78 F. Supp. 3d 791, 793 (N.D. Ill. 2015). Minimum wage must be paid on a week-by-week basis. *See e.g.*, *Masterson v. Fed. Express Corp.*, No. 07-CV-2241, 2008 U.S. Dist. LEXIS 99622 (M.D. Pa. Dec. 10, 2008).

### A. Plaintiffs Were Covered by the FLSA, IMWL, & IWPCA

As an initial matter, Plaintiffs are covered by the FLSA. "An employee is covered by the FLSA when either (1) the plaintiff/employee is a covered individual under the FLSA or (2) the

employer is a covered enterprise." *Rivera v. Heights Landscaping Inc.*, 2004 WL 434214, at *1, 2004 U.S. Dist. LEXIS 3746, at *2 (N.D. Ill. 2004). In other words, coverage exists if: (1) the employee is engaged in commerce (i.e., individual coverage) or (2) the employer is an enterprise engaged in commerce (i.e., enterprise coverage). 29 U.S.C. §§ 206, 207; *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 295 n. 8 (1985). Here, both individual and enterprise coverage are satisfied.

  A covered enterprise is one that "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1). SMC is clearly engaged in interstate commerce as they sold services and loan products throughout the United States. SOF ¶1. In addition, Plaintiffs are covered as individuals. The FLSA states that the Act applies to employees who regularly and on a recurrent basis, as part of their duties, engage in use of instrumentalities of interstate commerce such as telephone, internet, and mail. *Shoemaker v. Lake Arbutus Pavilion, LLC*, 115 F. Supp. 3d 974, 980 (7th Cir. 2015); 29 C.F.R. § 776.10. Here, Plaintiffs used the telephone, internet, and mail daily to sell loan products. SOF ¶38. SMC emails even confirm that this is the preferred method of communication, "everyone needs to be concentrating on Phone calls and Texts." SOF ¶39. SMC also provided loan officers with a virtual private network ("VPN"), so that they could work when they were not physically in the office, such as at home as well as on their personal phones. SOF ¶18.

  With respect to the state laws, Plaintiffs were protected under the IWML during their employment with SMC, as it is applies to a "corporation. . . or any person acting directly or indirectly in the interest of an employer in relation to an employee, for which one or more persons

5

are gainfully employed on some day within a calendar year," and employing more than four employees. 820 I.L.C.S. § 105/3. Similarly, under the Illinois Wage Payment & Collection Act ("IWPCA"), an employer is defined as "any individual or entity that employs one or more people, including certain employment and labor placement agencies and any person acting directly or indirectly in the interest of an employer in relation to an employee." 820 Ill. Comp. Stat. 115/2.

The IWML and IWPCA apply to all three Defendants because SMC, through the Birks, employed Ryan Klaic from 2011 to 2021, meaning that for the entire statute of limitations period, SMC employed at least one person. SOF ¶13. Moreover, from March 26, 2018 to May 2, 2022, SMC, through the Birks, employed 26 loan officers, SOF ¶15, and as of May 5, 2022, SMC, through the Birks, employed 18 loan officers. SOF ¶16. Accordingly, all Defendants are covered by the IMWL and IWPCA.

### B. Plaintiffs Worked Hours for Which They Were Not Paid Minimum Wage

The FLSA and IMWL both require employees to show they were 1) covered under the statute and 2) were not paid a minimum wage for each hour of work. *Callahan*, 78 F. Supp. at 793; *see also Berger v. Perry's Steakhouse of Ill., LLC*, 430 F. Supp. 3d 397, 404 (N.D. Ill. 2019) (citing 29 U.S.C. § 206 and 820 ILCS 105/4(a)(1)). In addition, the failure to pay *any wages* to an employee constitutes a violation of FLSA's requirement that employees are paid wages at the minimum wage. *See Conley v. Team Info. Age*, No. 03 C 0639, 2004 U.S. Dist. LEXIS 1007, at *3-4 (N.D. Ill. Jan. 27, 2004) (citations omitted). Further, an employee cannot waive his or her right to minimum wage. *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728 (1981); *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945).

Plaintiffs commonly worked hours for which they were not paid minimum wage. In fact, Plaintiffs worked many hours where they were not paid anything. SMC had a policy wherein loan

officers were never paid any minimum wage. SOF ¶24, 26. This is because, again, they were misclassified by Defendants as exempt employees. SOF ¶40,44. As a result, Plaintiffs went weeks during their employment without receiving any wages during the beginning of their employment as they worked to build business and during slow periods. SOF ¶24-27. Moreover, if a Plaintiff did not close a loan, then they received no wages for that week, even though they performed work in that week. SOF ¶26. This was confirmed not only by Plaintiff's testimony, but testimony from a manager level employee at SMC. An SMC manager, who previously held the role of loan officer, stated it took her 2-3 months to build up her clientele, and that she received zero commissions until she was able to close loans a few months later. SOF ¶27.

### C. Plaintiffs Worked Overtime Hours for Which They Were Not Properly Paid

The record establishes that Plaintiffs worked above 40 hours in one week and were not paid any overtime wages. Further, it is undisputed that Defendants not only had knowledge of the overtime work but encouraged it. Thus, summary judgment is proper.

Plaintiffs must show: 1) they were employed; 2) coverage under the FLSA; 3) they worked in excess of 40-hours in a workweek; 4) they were not paid overtime wages; and 5) constructive knowledge. *Wiseman*, 2021 WL 5321075, at *2; *Kellar*, 664 F.3d at 176-77.

First, Plaintiffs were employees and paid on a 100% commission basis. SOF ¶9-14; 22. This meant that despite the number of hours a loan officer worked in a week calling or otherwise pursuing leads, unless they actually closed a loan for which they received commission, they were paid nothing. SOF ¶21. Second, Plaintiffs are covered by the FLSA and IMWL. *See* Section II(A) *supra*. Third, Plaintiffs routinely worked over 40 hours in one week. Plaintiffs Noe and Klaic routinely worked between 60 to 70 hours in a week, up to 80. SOF ¶34. Plaintiff Platt worked on average 50 hours per week. SOF ¶34. Plaintiff Pruitt routinely worked between 40 and 50 hours per week. *Id.* Plaintiff Jno-Lewis worked above 40 hours in one week during their employment.

7

SOF ¶35. No loan officers were ever paid overtime wages. SOF ¶36. No paystub reflects overtime wages as it was SMC's policy to not pay overtime wages because loan officers were misclassified as exempt. SOF ¶36, 40, 44.

The record also reflects that Defendants had constructive knowledge that plaintiffs were working overtime. "The question is not whether [the defendant] could have known, but whether it should have known. *Brand v. Comcast Corp.*, 135 F. Supp. 3d 713, 739 (N.D. Ill. 2015) (citations omitted). The Seventh Circuit has found this requirement satisfied when employees received off the clock work calls and emails, and where they were required to check those before the shift for the day. *Meadows v. NCR Corp.*, No. 16 CV 6221, 2021 WL 5299778, at *4-5 (N.D. Ill. Nov. 15, 2021) ("An employer must compensate an employee for work that it knows about or should have known about through the exercise of reasonable diligence").

Defendants expected Plaintiffs to respond to leads via email, text, or phone call at all hours of the day, because leads came in at all hours of the day. SOF ¶29-32, 39. Also, SMC discouraged Plaintiffs from turning off their ability to receive leads. SOF ¶33. Moreover, Defendants instructed loan officers to work overtime: a company email sent to all Plaintiffs, except Platt, stated that in order to receive call in leads, the loan officer must be "in the office two days per week from 10am – 7pm and 1 Saturday per month." SOF ¶41. Thus, to receive preferable leads, loan officers were required to work 9 hours two days a week and one Saturday per month, at least. *See id.* Further, emails instruct loan officers to call leads every day, including weekends. SOF ¶52. This provides ample support that Defendants unequivocally knew and encouraged loan officers to work more than forty hours a week.

In addition, this culture was confirmed by loan officers communicating their long hours to SMC. By way of example, Plaintiff Brian Noe sent an email to Brian Birk and Richard Birk stating,

8

"I worked hard to get to this point by consistently delivering year after year working a lot of long hours" and "I am not afraid of work as I am still in the office late at night where others left a long time ago." SOF ¶53. Further, Plaintiff Klaic sent an email stating "plan to be here till 7 or later making calls." SOF ¶54. Since Defendants were keenly aware that no loan officer was ever compensated for overtime wages, the record demonstrates that SMC was aware of loan officers working overtime, for which they were not compensated.

### D. Plaintiffs Are Not Exempt from the FLSA or IMWL

Defendants do not dispute that they did not compensate loan officers with minimum wage and/or overtime pursuant to federal and state law. Rather, they rely on an untenable theory that the loan officers were exempt. Failure to pay Plaintiffs overtime wages and minimum wages cannot be excused by reliance on an exemption from the FLSA and IWML that is inapplicable. Namely, Defendants cannot escape summary judgment by relying on the outside sales employee exemption simply because their employment agreement designates the loan officers as such, or the 7(i) exemption, raised in Defendants' motion for summary judgment. Both exemptions are inapplicable.

*1. Plaintiffs Were Not Outside Sales Employees Exempt from the FLSA and IMWL*

Under the FLSA, an employee may be exempt from overtime if they are "employed in [] the capacity of outside salesman . . . ." 29 U.S.C. § 213(a)(1). An outside sales employee is an employee whose primary duty is making sales and who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty. *Silver v. Townstone Fin., Inc.* (citing 29 C.F.R. § 541.500(a)). For this analysis, the phrase "customarily and regularly" has been defined as requiring a frequency which is greater than occasional but less than constant, such that it encompasses work "normally and recurrently performed every workweek" but not "isolated or one-time tasks." *Id.* (citing 29 C.F.R. § 541.701).

9

The outside sales employee is an employee who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home. Outside sales does *not* include sales made by mail, telephone or the Internet unless such contact is used merely as an adjunct to personal calls. Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business. *Id.* (citing 29 C.F.R. § 541.502.).

Here, Plaintiffs worked primarily using company leads to originate loans. SOF ¶28. In fact, according to the SMC Vice President, Defendant Brian Birk, 82-90% of the leads loan officers used to originate loans were company generated. SOF ¶6, 28. This means loan officers were not out "pounding the pavement," looking for borrowers by meeting with them directly or by connecting with referral sources. Rather, they were being fed leads by SMC which they pursued from their home or company office. SOF ¶32. The loan officers' locations when responding to leads was overwhelmingly done from the SMC physical office or Plaintiffs' home offices. SOF ¶48. It was rare for Plaintiffs to work outside of either the physical office or their home office. *Id.* For example, Pruitt attended only one closing and one meeting with a realtor outside of the SMC or home office (together "office") during her tenure. SOF ¶49. More compelling is the testimony of manager Michelle Gospodarek whose testimony matches that of the Plaintiffs – she attended only 1-2 closings per months at her peak, prior to COVID-19 restrictions. SOF ¶50. Each loan officer described the isolated instances in which they worked outside of their home office or physical office as occasional occurrences, typically at the client's request, rather than by any norm. SOF ¶48. Further, SMC's own emails indicate that being in the office was required two days out of the week and one Saturday per month. SOF ¶41. Finally, this was pursuant to Company instruction – Brian Birk frequently sent emails indicating to loan officers that they should be

10

calling, texting, and emailing their leads. SOF ¶39. Such loan officers hardly resemble door-to-door salespeople contemplated as outside sales officers.

    2. *The 7(i) Exemption Does Not Apply*

Plaintiffs' claims are also not barred by the "retail or service establishment" exception found in 29 U.S.C. § 207(i). Plaintiff Noe has already submitted briefing on the issue of whether 7(i) precludes his claims. Such analysis also extends to the remaining Plaintiffs. First, to the extent SMC sells services, they are not retail services because SMC's services are not sold to the general public; the customer of SMC's services is the lenders it partners with.[1] Second, to the extent SMC is deemed to sell products, it is not at the end of the stream of retail distribution because it acts as a middleman and the loans are resold on the secondary market.[2] SOF ¶2. SMC's own manager admitted that SMC is not at the end of the stream of distribution, stating that after SMC matches the borrower to the lender, the loans are then resold. *Id.* Third, SMC is a part of the financial industry, barring application of 7(i).[3] Finally, SMC cannot establish that any Plaintiffs regular rate of pay exceeded 1.5 times the minimum wage because it did not keep track of any Plaintiff's hours by which to make such calculation – a point which was conceded in the testimony of Brian Birk.[4] SOF ¶37.

    **E. The Birks Can be Held Individually Liable**

The Birks are personally liable because they exercised the relevant authority and worked together to implement policies and practices that resulted in the violations described herein. The Northern District of Illinois has developed a standard for determining individual liability in an

---

[1] Plaintiffs incorporate the arguments and citations made in Noe's 7(i) opposition. ECF No. 136 at 4-6.
[2] Plaintiffs incorporate the arguments and citations made in Noe's 7(i) opposition. ECF No. 136 at 6-11.
[3] Plaintiffs incorporate the arguments and citations made in Noe's 7(i) opposition. ECF No. 136 at 4-6.
[4] Plaintiffs incorporate the arguments and citations made in Noe's 7(i) opposition. ECF No. 136 at 4-6.

11

FLSA action.[5] In *Schneider v. Cornerstone Pints, Inc.*, a four-part rule was set forth by the Northern District of Illinois: 1) a person must act in the interests of an employer in relation to an employee and must do more than merely supervise; 2) all relevant facts should be considered, including whether the defendant possessed the power to hire and fire the employees; supervised and controlled employee work schedules or conditions of employment; determined the rate and method of payment; and maintained employment records; 3) a defendant's conduct must have caused, in whole or in part, the alleged violation; and 4) the defendant must have actually exercised his authority, at least enough to have caused the violation in whole or in part. 148 F.Supp.3d 690, 696-698 (N.D. Ill. 2015).

Richard Birk's conduct and actions as President of SMC satisfy the test. Richard Birk acted within the interest of SMC, as he was the President, he had the power to hire and fire employees, and determined their compensation. SOF ¶3-5. He also caused the minimum wage and overtime violations because he approved the policy of SMC to not pay minimum wage or overtime wages, and he exercised his authority as President to implement and enforce that policy. SOF ¶5.

Brian Birk also qualifies for individual liability. As the Vice President, Brian Birk acts in the interests of SMC, and supervised employees, determined the payroll amount, and maintained employment records, including payroll records. SOF ¶¶6-7, 32, 39, 41. He also caused the violation by encouraging loan officers to work overtime, to work in the office, and was responsible for discussing compensation plans with loan officers. *Id.* Brian Birk exercised his authority as Vice

---

[5] The Seventh Circuit has yet to address the legal test or standard to decide if an individual is an employer under the FLSA. *See Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987) (Noting, in dicta, that "[t]he word 'employer' is defined broadly enough in the [FLSA] ... to permit naming another employee rather than the employer as defendant, provided the defendant had supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation.").

President by enforcing the requirements to work in the office and enforcing the pay plans without payment of minimum wages and overtime. *Id.*

### F. The Statute of Limitations is Three Years Because Defendants Acted Willfully

A two-year statute of limitations applies for FLSA claims, except for claims arising out of willful violations. *Joong Ko v. K Stones, Inc.*, No. 21-cv-0011, 2022 U.S. Dist. LEXIS 116691 (N.D. Ill. July 1, 2022) (citing 29 U.S.C. § 255(a)). The IMWL, by contrast, has a three-year statute of limitations for all claims. 820 Ill. Comp. Stat. § 105/12(a); *Wilkins v. Just Energy Grp., Inc.*, 171 F. Supp. 3d 798, 809 (N.D. Ill. 2016); *Reynoso v. Motel LLC*, 71 F. Supp. 3d 792, 799 (N.D. Ill. 2014). To establish willfulness, Plaintiffs must show that Defendants "either knew they were violating the Act or were indifferent to whether they were violating it or not (and therefore reckless.)" *E.E.O.C. v. Madison Cmty. Unit School Dist. No. 12*, 818 F.2d 577, 585 (7th Cir. 1987) (internal alterations omitted); *see also McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988) (violations under the FLSA are willful if the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute").

Defendants acted willfully in violating the FLSA and thus, the three-year statute of limitations period applies. As President and Vice President, Richard Birk and Brian Birk were the only individuals with authority over loan officers' compensation and thus the only individuals responsible for determining compliance with such laws. SOF ¶4-8. Defendant Richard Birk, as Founder and President of SMC, testified that the Company did not at any point conduct an analysis as to whether loan officers were exempt from the FLSA. SOF ¶40, 44. Rather, loan officers allegedly decided whether they were exempt of non-exempt employees by electing to be paid hourly with a reduced commission, or purely through commission. SOF ¶44. Allowing loan officers to decide whether they will be paid hourly or by commission is reckless disregard for whether its conduct of classifying loan officers paid commission improperly was prohibited or not.

13

A cursory investigation would reveal that loan officers such as Plaintiffs who work primarily utilizing company leads, in their home or Company office, texting, emailing, and calling leads are not exempt outside salespersons. Brian Birk and Richard Birk were aware of these inside sales duties being performed by Plaintiffs and did nothing to alter their compensation. *See* Section II(E) *supra*. Thus, a three-year statute of limitations is applicable to Plaintiff's claims.

### III. Plaintiffs are Entitled to Summary Judgment on their Claim Under the IWPCA for Improper Deductions (Count IV)

The IWPCA protects employees from illegal deductions that employers may try to deduct from employee pay. Defendants are covered by the IWPCA, and Plaintiffs were subject to sporadic, unpredictable, deductions from their pay that they are entitled to recoup. Accordingly, Defendants are liable and summary judgment is proper on this claim. Further, the IWPCA has a ten-year statute of limitations period. *House v. Ill. Bell Tel. Co.*, 148 F. Supp. 3d 701, 705 (N.D. Ill. 2015); *Ortiz v. Manpower, Inc.*, No. 11-2009, 2012 U.S. Dist. LEXIS 59528 (C.D. Ill. Apr. 10, 2012) ("as of 2007, a ten-year statute of limitations applies to IWPCA claims.") (citing 735 Ill. Comp. Stat. § 5/13-206). Thus, based on the ten-year statute of limitations, none of Plaintiffs claims are time-barred and the putative plaintiffs would include all loan officers with claims within that time.

#### A. Plaintiffs Were Subject to Illegal Deductions from Their Wages

The IWPCA prohibits employers from taking deductions from employees' wages unless the deductions are "(1) required by law; (2) to the benefit of the employee; (3) in response to a valid wage assignment or wage deduction order; [or] (4) made with the express written consent of the employee, given freely at the time the deduction is made." 820 Ill. Comp. Stat. 115/9. Defendants cannot support that their deductions fell into any of these permissible categories. Defendants only argue that their wage deductions were authorized by Plaintiffs' employment

14

agreements. *See* ECF No. 121 at 5-6. Defendants' primary argument is that Plaintiffs' signatures on an employment agreement conferred the right for Defendants to take deductions, in widely varying amounts, for several fees depicted in the table below. *See id.* Plaintiffs signature on an employment agreement, signed at the beginning of the employment is not sufficient because protections of the IWPCA are not waivable and the deductions were not taken with proper written consent was given *at the time* the deduction was made.[6] Plaintiffs had deductions such as costs for verifications of employment, credit reports, appraisals, miscellaneous marketing, condominium questionnaires, subordination, text blast requested, lender credit cures, pest inspections and FHA administrative fees removed from their wages, without written consent at the time of the deduction, as required by Illinois law. SOF ¶¶55-56, 58-59. Further, several of the fees, such as "subordination" and "text blast requested" were not contemplated at all by the employment agreement. SOF ¶57,58. Thus, under no theory can Defendants establish that all deductions had written consent. As a result, summary judgment for Plaintiffs is proper on this Count.

## **CONCLUSION**

As explained above, Defendants failed to pay Plaintiffs, and loan officers generally, overtime wages, minimum wages, and improperly deducted numerous, unauthorized fees from their wages, without requisite consent. Further, Defendants argue there are no issues with their conduct and flagrantly continue these illegal practices today. As a result, the record supports that summary judgment is warranted for Plaintiffs on all of their claims, and Plaintiffs are entitled to damages, in an amount to be proven at trial.

Dated: November 30, 2022                                         Respectfully submitted,

---

[6] Plaintiffs incorporate the arguments and citations made in Noe & Pruitt's opposition to Defendants' motion for summary judgment on Count IV. ECF No. 138 at 2-7.

By: */s/ Katharine Thomas Batista*

Ari Karen (*pro hac vice*)
Katharine Thomas Batista (*pro hac vice*)
Arielle Stephenson (*pro hac vice*)
Mitchell Sandler LLC
1120 20th Street, NW, Suite 725
Washington, DC 20036
Tel: 202-886-5265
akaren@mitchellsandler.com
kbatista@mitchellsandler.com
astephenson@mitchellsandler.com

*Attorneys for Plaintiffs Brian Noe, Eileen Pruitt, and Opt-In Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2022, a copy of the foregoing **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** was electronically filed with the Clerk of the United States District Court, Northern District of Illinois, Eastern Division by using the Court's CM/ECF system.

I further certify that on November 30, 2022, all interested parties by their counsel of record, were electronically served on this date via the CM/ECF system.

*/s/ Katharine Thomas Batista*
Katharine Thomas Batista
