UNITED STATES DISTRICT
COURT NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

|  |  |
|---|---|
| BRIAN NOE and EILEEN PRUITT on behalf of themselves and all others similarly situated, Plaintiffs, -against- SMART MORTGAGE CENTERS, INC., RICHARD BIRK, and BRIAN BIRK, Defendants. | Case No.: 1:21-cv-01668 |

# MOVANT'S LOCAL RULE 56.1(A)(2) STATEMENT OF UNDISPUTED MATERIAL FACTS

**Background**

1. Smart Mortgage Centers, Inc. ("SMC") is a business that sells mortgage products and services in several states by matching consumers to lenders. Richard Birk Tr., ECF No. 136-1, Ex. D at 8:6-19.

2. After SMC matches the borrower to the lender, the loans are then resold. Michelle Gospodarek Tr. at 16:3-13 [hereinafter Ex. A].[1]

3. Richard Birk is the Founder and President of SMC. Richard Birk Tr., ECF No. 136-1, Ex. D at 7:9-22, Birk Defendants Answer to Plaintiff's First Amended Complaint [hereinafter Birks' Answer to FAC], ECF No. 67, ¶10.

---

[1] Attached as Ex. A.

4. In his role as President, Richard Birk had the power to hire and fire employees, modify their commission, and determine their compensation. Richard Birk Tr., ECF No. 136-1, Ex. D at 35:15-19; 76:12-17; 78:2-9; 79:10-12.

5. Richard Birk approved the inclusion of Schedule B to the loan officer employment agreements, which classifies loan officers as exempt outside sales employees from the overtime and minimum wage requirements of the FLSA and Illinois minimum wage and overtime laws. Richard Birk Tr., ECF No. 136-1, Ex. D at 80:5-14; 86:17-25; 87:1-13.

6. Richard Birk's son, Brian Birk, serves as the Vice President of SMC. Birks' Answer to FAC, ECF No. 67, ¶11; Richard Birk Tr., ECF No. 136-1, Ex. D at 75:22-24.

7. In his role as Vice President, Brian Birk was responsible for maintaining payroll and employment records on behalf of SMC and determining the amount of loan officers' commissions. Decl. of Brian Birk, May 2, 2022, ECF No. 75-1, ¶5-8; Brian Birk Tr., ECF No. 146-6 at 9:18-25, 10:1-3; 17:19-25, 18:1-5.

8. Brian Birk also consulted with Richard Birk about loan officer compensation for new employees and modifications to existing loan officer compensation. Brian Birk Tr., ECF No. 146-6 at 7:21-25, 8:14-25; 9:1-5.

9. Plaintiff Brian Noe ("Noe") was employed from October 29, 2013, to December 20, 2019. Decl. of Brian Noe, ECF No. 66-2, ¶1.

10. Plaintiff Eileen Pruitt ("Pruitt") was employed from May 6, 2019, to February 2, 2020. Decl. of Eileen Pruitt, ECF No. 66-3, ¶1.

11. Plaintiff Alan Platt ("Platt") was employed from approximately April 5, 2018, to January 1, 2019. Decl. of Alan Platt, ECF No. 66-4, ¶1.

12. Plaintiff Shian Jno-Lewis ("Jno-Lewis") was employed from July 27, 2016, to approximately December 2018. Decl. of Shian Jno-Lewis, ECF No. 66-5, ¶1.

13. Plaintiff Ryan Klaic ("Klaic") was employed from June 1, 2011, to August 6, 2021. Smart Mortgage Centers, Inc. Employee Data Sheet at Birk 266;[2] Ryan Klaic 2021 Loan Journal at Birk 394 [hereinafter Ex. C].[3]

14. Plaintiff Stephanie Holland ("Holland")[4] was employed from October 19, 2015 through approximately the end of 2018. Holland Loan Officer Retention Agreement at Birk 339 [hereinafter Ex. D];[5] E-mail from Stephanie Holland to Brian Birk (July 2, 2018) at Birk 364.[6]

15. From March 26, 2018, to May 2, 2022, SMC, through the Birks, employed 26 loan officers. Decl. of Brian Birk, May 2, 2022, ECF No. 75-1, ¶18.

16. As of May 5, 2022, SMC, through the Birks, currently employs 18 loan officers. Decl. of Brian Birk, May 2, 2022, ECF No. 75-1, ¶19.

17. SMC has held a physical office location in Illinois. Richard Birk Tr., ECF No. 136-1, Ex. D at 64:19-25; 65:1-5.

18. Plaintiffs were able to work from SMC's offices or from home, using a VPN. Richard Birk Tr., ECF No. 136-1, Ex. D at 65:17-25; 66:1-12; *see also* Decl. of Eileen Pruitt, ECF No. 66-3, ¶2.

---

[2] Attached as Ex. B.

[3] Attached as Ex. C. Plaintiffs note that the heading of the document states 2020 Loan Journal, but the content reflects entries for 2021.

[4] Stephanie Holland aka Stephanie Pichardo.

[5] Attached as Ex. D.

[6] Attached as Ex. E.

19. SMC hired Plaintiffs to solicit borrowers and sell mortgage loans from SMC's qualified lending partners, upon which the loan officer would earn a commission for each loan ultimately closed. Richard Birk Tr., ECF No. 136-1, Ex. D at 7:23-25, 8:1-19; Eileen Pruitt Tr., ECF No. 147-2 at 34:3-11; Ex. A at 16:3-13; 17:8-20.

**Loan Officer Compensation**

20. Rather than being classified as exempt or non-exempt by the Company, loan officers at Smart Mortgage were offered a choice of being paid an hourly wage, with a reduced commission, or purely commission. Richard Birk Tr., ECF No. 136-1, Ex. D at 38:6-10.

21. Loan officers' compensation based purely on commissions means that their compensation is dependent on the volume of the loans closed, rather than an hourly amount per week. Brian Birk Tr., ECF No. 146-6 at 9:18-25; 10:1, 8-15.

22. All Plaintiffs seeking summary judgment were paid on a 100% commission basis. Richard Birk Tr., ECF No. 136-1, Ex. D at 91:5-14; Brian Noe Tr., ECF No. 144 at 27: 21-24; Eileen Pruitt Tr., ECF No. 147-2 at 17:19-21; Decl. of Alan Platt, ECF No. 66-4, ¶4; Decl. of Shian Jno-Lewis, ECF No. 66-5, ¶3; Ex. D at Schedule A, Birk 350.

23. Plaintiff Eileen Pruitt ("Pruitt") requested payment in the form of $5,000 per month plus a reduced commission for each loan closed for the first 3 months of her employment, but the request was denied by Brian Birk. Eileen Pruitt Tr., ECF No. 147-2 at 63:5-14; E-mail from Eileen Pruitt to Brian Birk (April. 24, 2019, 11:09 AM) at Birk 564-65.[7]

24. At the inception of Plaintiffs' employment, it was typical for loan officers to make little to no commissions as they built up their reputation and business and loan officers at SMC

---

[7] Attached as Ex. F.

were not paid any minimum wages. Decl. of Eileen Pruitt, ECF No. 66-3 at ¶8-9, Decl. of Alan Platt, ECF No. 66-4, at ¶8; Ex. A at 30:16-24, 31:1-7, 15-24, 32:1-5.

25. During slow periods, loan officers also received no commissions, and no minimum wage. Decl. of Brian Noe, ECF No. 66-2, ¶5-6.

26. If a Plaintiff did not close a loan, then they received no wages for that week, even though they performed work in that week. Decl. of Brian Noe, ECF No. 66-2, ¶5-6; Decl. of Eileen Pruitt, ECF No. 66-3, ¶6; Decl. of Alan Platt, ECF No. 66-4, ¶8; Ex. A at 31:15-24; 32:1-5.

27. SMC manager, and loan officer, Michelle Gospodarek stated it took her 2-3 months to build up her clientele, and that she received zero commissions until she was able to close loans a few months later. Ex. A at 30:20-24; 31:1-24; 32:1-5.

**Loan Officer Hours and Duties**

28. Plaintiffs originated loans primarily using company leads and 82- 90% of loan officer leads were company generated. Brian Birk Tr., ECF No. 146-6 at 48:5-6; 50:4-14; *see also* Decl. of Brian Noe, ECF No. 66-2, ¶4; Decl. of Eileen Pruitt, ECF No. 66-3, ¶3, Decl. of Alan Platt, ECF No. 66-4, ¶3. This is as opposed to Plaintiffs being required to self-source leads using their own sources. Brian Birk Tr., ECF No. 146-6 at 49:21-25, 50:1-5; Ex. A at 48:4-6.

29. SMC received leads at any and all times, not only during normal business hours. Brian Birk Tr., ECF No. 146-6 at 51:12-15; Eileen Pruitt Tr., ECF No. 147-2 at 15:11-20; 26:1-3; Brian Noe Tr., ECF No. 144 at 65:14-24, 66:1; Ex. A at 25:4-12.

30. Further, the expectation was that loan officers would respond to the borrower quickly, within 15 minutes of receiving the leads. Brian Birk Tr., ECF No. 146-6 at 52:10-13. Eileen Pruitt Tr., ECF No. 147-2 at 15:11-20; Ex. A at 29:4-10; 19-24.

31. For example, loan officers were expected to and would respond to leads outside of typical business hours of 9am to 5pm. Eileen Pruitt Tr., ECF No. 147-2 at 12:1-5; 15:11-20; Brian Noe Tr., ECF No. 144 at 65:14-24, 66:1; Shian Jno-Lewis's Responses & Objections to Defendants Richard Birk and Brian Birk's Interrogatories at Interrogatory No. 19 [hereinafter Ex. G];[8] Eileen Pruitt's Responses & Objections to Defendants Richard Birk and Brian Birk's Interrogatories, ECF No. 147-1 at Interrogatory No. 19 [hereinafter Pruitt's Rog Responses]; Screenshot of E-mail from Ryan Klaic to Brian Birk (Oct. 10, 2017, 3:35 PM) produced by Plaintiffs to Defendants at Pltfs. 0258 [hereinafter Ex. H].[9]

32. Company E-mails told loan officers to call borrower leads every day, including weekends. Screenshot of E-mail from Brian Birk to employees including Ryan Klaic, Stephanie Holland, and Brian Noe (Oct. 19, 2017, 11:54 AM), at Pltfs. 01111.[10]

33. While loan officers were permitted to turn off leads, management did not like it when they did so, and it was discouraged. Eileen Pruitt Tr., ECF No. 147-2 at 16:8-19; Ex. G at Interrogatory No. 19.

34. Plaintiffs Eileen Pruitt, Brian Noe, Ryan Klaic, and Alan Platt routinely worked above 40 hours in one week. Brian Noe Tr., ECF No. 144 at 22:20-24; 23:1-2 (worked between 60-70 hours per week, up to 80); Decl. of Brian Noe, ECF No. 66-2, ¶7; Brian Noe's Responses

---

[8] Attached as Ex. G.

[9] Attached as Ex. H. The native E-mail versions of screenshots of E-mails produced by Plaintiffs are the subject of Plaintiffs' Motion to Compel Production of Documents presently before this Court, ECF No. 146, as Plaintiffs requested the native E-mail version of all screenshots they produced in discovery several times, and Defendants refused and have failed to produce them.

[10] Attached as Ex. I. The native E-mail versions of screenshots of E-mails produced by Plaintiffs are the subject of Plaintiffs' Motion to Compel Production of Documents presently before this Court, ECF No. 146, as Plaintiffs requested the native E-mail version of all screenshots they produced in discovery several times, and Defendants refused and have failed to produce them.

& Objections to Defendants Richard Birk and Brian Birk's Interrogatories at Interrogatory No. 5, ECF No. 136-1 at Ex. A, Interrogatory No. 5 [hereinafter Noe Rog. Responses]; Eileen Pruitt Tr., ECF No. 147-2 at 11:16-20 (worked 40-50 hours per week); Eileen Pruitt's Responses & Objections to Defendants Richard Birk and Brian Birk's Interrogatories, ECF No. 147-1, Interrogatory No. 5 [hereinafter Pruitt Rog. Responses]; Decl. of Alan Platt, ECF No. 66-4, ¶5 (regularly worked over 40 hours); Alan Platt's Responses & Objections to Defendants Richard Birk and Brian Birk's Interrogatories at Interrogatory No. 5 [hereinafter Ex. J] (approximately 50 per week);[11] Ryan Klaic's Responses & Objections to Defendants Richard Birk and Brian Birk's Interrogatories at Interrogatory No. 5 [hereinafter Ex. K] (worked 60-70 hours per week, up to 80).[12]

35. Plaintiff Jno-Lewis worked above 40 hours in one week on several occasions during her employment. Decl. of Shian Jno-Lewis, ECF No. 66-5, ¶4; Ex. G at Interrogatory No. 5.

36. Plaintiffs were never paid any overtime wages. Decl. of Brian Noe, ECF No. 66-2, ¶5-6; Decl. of Eileen Pruitt, ECF No. 66-3, ¶5,8-9; Decl. of Alan Platt, 66-4, ¶4, 6, 8; Decl. of Shian Jno-Lewis, ECF No. 66-5, ¶3.

37. Defendants did not record any hours worked for Plaintiffs, or any other loan officers. Brian Birk Tr., ECF No. 146-6 at 71:10-13; Brian Noe Tr., ECF No. 144 at 63:21-24; Noe Rog. Responses, ECF No. 136-1 at Ex. A, Interrogatory No. 8; Pruitt Rog. Responses, ECF No. 147-1 at Interrogatory No. 8; Ex. G at Interrogatory No. 8; Ex. J at Interrogatory No. 8; Ex.

---

[11] Attached as Ex. J.

[12] Attached as Ex. K.

K at Interrogatory No. 8; Stephanie Holland's Responses & Objections to Defendants Richard Birk and Brian Birk's Interrogatories, at Interrogatory No. 8.[13]

38. Plaintiffs used telephone, internet and E-mail to perform their duties. In fact, Plaintiffs relied on the same to originate loans from the Company-provided leads. Decl. of Brian Noe, ECF No. 66-2, ¶3-4; Decl. of Eileen Pruitt, ECF No. 66-3, ¶3-4; Decl. of Alan Platt, ECF No. 66-4 ¶2-3; Decl. of Shian Jno-Lewis, ECF No. 66-5, ¶2; Brian Noe Tr., ECF No. 144 at 16:11-18; Eileen Pruitt Tr., ECF No. 147-2 at 53:14-24, 54:1-4; Ex. A at 62:2-9.

39. Brian Birk sent E-mails indicating to loan officers that they should be calling, texting, and E-mailing their leads. E-mail from Brian Birk to employees including Brian Noe, Ryan Klaic, and Stephanie Holland (Aug. 2, 2017, 10:44 AM) at Pltfs. 00863;[14] Ex. I at Pltfs. 01111.

40. Defendant Richard Birk, as Founder and President of SMC, testified that the Company performed no analysis or investigation into whether loan officers should be considered exempt or non-exempt. Richard Birk Tr., ECF No. 136-1, Ex. D at 43:4-25, 44:1-25, 45:1-8; 47: 9-12.

41. In a company E-mail sent to all Plaintiffs, except Platt, Defendants instructed Plaintiffs that in order to receive call in leads, the loan officer must be "in the office two days per week from 10am – 7pm and 1 Saturday per month." E-mail from Brian Birk to SMC employees (Jan. 4, 2017, 10:06 AM) at Pltfs. 00860 [hereinafter Ex. N].[15] Essentially, to even have the opportunity to earn any commission, Plaintiffs were to be in the office at least 18-25

---

[13] Attached as Ex. L

[14] Attached as Ex. M.

[15] Attached as Ex. N.

hours a week, without any hourly compensation. *Id*; *see also* Brian Noe Tr., ECF No. 144 at 62:14-24; 63:1-2.

42. Thus, Plaintiffs were instructed to be at the office working, despite not earning hourly wages. Ex. N at Pltfs. 00860; SOF ¶22.

**Loan Officer Agreements**

43. Plaintiffs signed nearly identical employment agreements with SMC. Noe 2018 Loan Officer Retention Agreement, ECF No. 7-2, Ex. B; Noe 2013 Loan Officer Retention Agreement, ECF No. 66-8; Pruitt Loan Officer Retention Agreement, ECF No. 121-2; Platt Loan Officer Retention Agreement at Birk 228-39 [hereinafter Ex. O];[16] Ryan Klaic Loan Officer Retention Agreements at Birk 276-89 [hereinafter Ex. P];[17] Shian Jno-Lewis Loan Officer Retention Agreement at Birk 216-27 [hereinafter Ex. Q];[18] Ex. D.

44. The employment agreements classify loan officers as exempt outside sales employees. Noe 2018 Loan Officer Retention Agreement, ECF No. 7-2, Ex. B at Schedule B; Noe 2013 Loan Officer Retention Agreement, ECF No. 66-8 at Schedule B; Pruitt Loan Officer Retention Agreement, ECF No. 121-2 at Schedule B; Ex. O at Schedule B; Ex. P at Schedule B;[19] Ex. Q at Schedule B; Ex. D at Schedule B.

45. But Richard Birk testified that loan officers decided whether they were exempt or non-exempt employees, with no regard to whether the loan officer's salary and/or duties

---

[16] Attached as Ex. O.

[17] Attached as Ex. P. Ryan Klaic signed several Loan Officer Retention Agreements throughout his tenure (2011, 2012, 2018, and 2019), which Plaintiffs have combined into this singular Ex. P.

[18] Attached as Ex. Q.

[19] Schedule B appears once in each of the four Loan Officer Retention Agreements.

satisfied the legal requirements for their "chosen" classification. Richard Birk Tr., ECF No. 136-1, Ex. D 47: 9-12.

46. The outside sales employee rider to the employment agreement lists several duties, including that loan officers are expected to sell mortgage products, meet with borrowers in person, and that contact with borrowers over the phone and E-mail is only adjunct to in-person meetings. Noe 2018 Loan Officer Retention Agreement, ECF No. 7-2, Ex. B at Schedule B; Noe 2013 Loan Officer Retention Agreement, ECF No. 66-8 at Schedule B; Pruitt Loan Officer Retention Agreement, ECF No. 121-2 at Schedule B; Ex. O at Schedule B; Ex. P at Schedule B;[20] Ex. Q at Schedule B; Ex. D at Schedule B.

47. However, such duties were in direct contradiction to the actual duties performed by loan officers and expectations of the company regarding their mode of work. Brian Noe Tr., ECF No. 144 at 62:3-16; 74:8-14; Eileen Pruitt Tr., ECF No. 147-2 at 28:11-24; 29:1-24; 30:1-24; 31:1-24; 32:1-24; 33:1-10, 19-24; 34:1-24; 35:1-24; 36:1-24; 37:1-24; 38:1-24; 39:1-19; 40:4-18; 41:3-12; 42:8-14.

48. Loan officers typically worked from their home office or the SMC physical office and described the isolated instances in which they worked outside of their home office or physical office as occasional occurrences, typically at the client's request, rather than because it was encouraged or typical. Noe Rog. Responses, ECF No. 136-1 at Ex. A, Interrogatory Nos. 6, 16, 18, 24; Pruitt Rog. Responses, ECF No. 147-1 at Interrogatory Nos. 6, 16, 18, 24; Ex. G at Interrogatory No. 8; Ex. J at Interrogatory Nos. 6, 16, 18, 24; Ex. K at Interrogatory Nos. 6, 16, 18, 24; Stephanie Holland's Responses & Objections to

---

[20] Schedule B appears once in each of the four Loan Officer Retention Agreements.

Defendants Richard Birk and Brian Birk's Interrogatories, at Interrogatory No. 8.6, 16, 18, 24; Ex. L at Interrogatory Nos. 6, 15, 16, 18, 24.

49. For example, Pruitt attended one closing and one meeting with a realtor outside of the SMC or home office (together "office") in her entire tenure. Eileen Pruitt Tr., ECF No. 147-2 at 18:14-23.

50. Michelle Gospodarek, operations manager and loan officer at SMC, attended only 1-2 closings per month at her peak. And this was prior to COVID-19 restrictions. Ex. A at 27:16-24; 28:1-9. During and after the pandemic, loan officers were even less likely to work outside of their homes or SMC offices. Ex. A at 27:17-24, 28:1-4.

51. In addition, Plaintiffs Brian Noe and Ryan Klaic were in the office almost every day. Jon Butusov Tr. at 28:13-14; 29:1-5.[21]

52. Further, E-mails instructed loan officers to call leads every day, including weekends. Ex. I at Pltfs. 01111.

53. As an example of the long and irregular hours Plaintiffs worked, Plaintiff Brian Noe sent an E-mail to Brian Birk and Richard Birk stating, "I worked hard to get to this point by consistently delivering year after year working a lot of long hours" and "I am not afraid of work as I am still in the office late at night where others left a long time ago." E-mail from Brian Noe to Brian Birk, Richard Birk (Jan. 4, 2018, 10:03 PM) at Pltfs. 00839.[22]

54. Plaintiff Klaic sent an E-mail to Brian Birk on October 10, 2017, stating "plan to be here till 7 or later making calls." Ex. H at Pltfs. 0258.

---

[21] Attached as Ex. R.

[22] Attached as Ex. S.

**Loan Officer Wage Deductions**

55. Loan officers had several fees deducted for their pay, including fees for verification of employment ("VOE"), credit reporting fees, and others. Brian Birk Tr., ECF No. 146-6 at 11:22-25; 12:1-5; 16:14-17; 18:6-11; Ex. A at 19:18-24; 20:1-23.

56. Plaintiff Noe had the following fees deducted from his commission by Defendants: VOE, credit report, appraisal. ECF No. 147 at ¶1-5 and citations therein.

57. The employment agreement at issue provides in relevant part:

> All funds or drafts received by Loan Officer during his employment at Smart, such as application deposits, appraisal fees, credit reporting fees, title charges, etc., shall be made payable only to Smart and shall immediately be delivered to Smart [....]. Loan Officer acknowledges that he/she shall be responsible for the collection of all fees in connection with mortgage Loans originated by Loan Officer, and, if not so collected by Loan Officer from Borrower at the time of Loan closing, then Smart shall have the right to set off and deduct from any amounts due Loan Officer hereunder any amounts not paid, including but not limited to the above, and any shortages created by improperly processing said mortgage Loans; unpaid amounts due Smart; bounced Borrower(s) checks; any and all legal fees and costs relating to such matters; lender premium repayments for loans originated in violation of a lender's correspondent agreement with Smart and other items due Smart or third parties relating to Loan Officer, his or her Borrower(s) or otherwise.

Noe 2018 Loan Officer Retention Agreement, ECF No. 7-2, Ex. B, ¶7; Noe 2013 Loan Officer Retention Agreement, ECF No. 66-8, ¶7; Pruitt Loan Officer Retention Agreement, ECF No. 121-2, at ¶7; Ex. O, ¶7; Ex. P, ¶7;[23] Ex. Q, at ¶7; Ex. D, at ¶7.

58. Ryan Klaic had the following fees, among others, deducted from his commission by Defendants: Subordination; VOE; credit report; text blast requested; lender credit cure;

---

[23] Paragraph 7 appears once in each of the four Loan Officer Retention Agreements.

condo questionnaire; processing; appraisal; and pest inspection. Ryan Klaic 2018 Loan Journal at Birk 374-77 (credit report); Birk 375 (VOE); Birk 377 (text blast requested deduction; $60.00); Birk 378 (subordination deduction; $565);[24] Ryan Klaic 2019 Loan Journal at Birk 379 (VOE); Birk 379-83 (credit report); Birk 391 (lender credit cure; $31.00);[25] Ryan Klaic 2020 Loan Journal at Birk 384 (VOE); Birk 385-86, 388-89 (credit report); Birk 384 (condo questionnaire; $246); Birk 384, 388 (appraisal); Birk 389 (pest inspection; $150.00);[26] Ex. C at Birk 391, 393 (VOE); Birk 391-92 (credit report); Birk 392 (appraisal); E-mail from Brian Birk to Ryan Klaic (July 19, 2018) at Birk 443 (processing fee; $110). [27]

59. Alan Platt and Shian Jno-Lewis had a credit report fee deducted from their pay. Alan Platt Commission Sheet 9/20/2018, Birk 424;[28] Alan Platt Commission Sheet 10/29/2018, Birk 425;[29] Alan Platt Commission Sheet 9/10/2018, Birk 427;[30] Shian Jno-Lewis Commission Sheet 12/29/2017, Birk 432.[31]

60. Loan officers received commission sheets, which contained a portion at the bottom that said, "Sign to acknowledge this commission is correct: Loan Officer." Brian Birk Tr., ECF No. 146-6 at 15:6-11.

---

[24] Attached as Ex. T.

[25] Attached as Ex. U.

[26] Attached as Ex. V.

[27] Attached as Ex. W.

[28] Attached as Ex. X.

[29] Attached as Ex. Y.

[30] Attached as Ex. Z.

[31] Attached as Ex. AA.

61. SMC accepted commission sheets without signatures, and it was common for them to be unsigned. Brian Birk Tr., ECF No. 146-6 at 15:12-17, 25; 16:1.

62. While in theory Plaintiffs could dispute a deduction from their commissions, Plaintiffs did not believe that Defendants would correct them. Brian Noe Tr., ECF No. 144 at 76:19-24; 77:1-2. Accordingly, the Plaintiffs were subjected to the deductions from their purely commission-based compensation, leaving them with no pay certain weeks despite hours worked and significant deductions from the commission they earned.

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2022, a copy of the foregoing **MOVANT'S LOCAL RULE 56.1(A)(2) STATEMENT OF UNDISPUTED MATERIAL FACTS** was electronically filed with the Clerk of the United States District Court, Northern District of Illinois, Eastern Division by using the Court's CM/ECF system.

I further certify that on November 30, 2022, all interested parties by their counsel of record, were electronically served on this date via the CM/ECF system.

*/s/ Katharine Thomas Batista*
Katharine Thomas Batista