**BC**

 **FILED**
6/12/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

 QR

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| | ) | |
| | ) | **Case Number**: |
| Plaintiff | ) | |
| | ) | **Judge:** |
| v. | ) | |
| | ) | **Magistrate Judge:** |
| | ) | |
| Defendant | ) | |

IN THE UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

BRIAN NOE, et al.,

Plaintiffs,

v.

SMART MORTGAGE CENTERS, INC., et al.,

Defendants.

Case No. 21 CV 01668 Judge: Hon. Edmond E. Chang

## DEFENDANT RICHARD BIRK'S MOTION FOR NEW TRIAL

Pursuant to Federal Rule of Civil Procedure 59(a), Defendant Richard Birk respectfully moves this Court for a new trial on the grounds that the jury was improperly exposed to extrinsic, highly prejudicial, and inadmissible evidence concerning the criminal history of his son and co-defendant, Brian Birk. The spillover effect of this improper disclosure irreparably tainted the jury's view of Richard Birk's credibility and managerial integrity, depriving him of a fair trial.

## I. INTRODUCTION

During the trial, Plaintiffs' counsel, Mr. Alexander Rogosa, knowingly asked Brian Birk whether he had ever been convicted of a federal crime. The question was asked and answered in open court before any sidebar or objection could be made. The Court subsequently instructed the jury to disregard the question and answer, but the damage was done. The jury had already heard Brian Birk confirm that he had been convicted.

This improper question constituted a direct violation of Federal Rule of Evidence 609(b) and the associated notice requirement for using convictions older than 10 years. The conviction at issue dated back to 2007, with a sentence completed in 2010 — well outside the admissibility window. Plaintiffs' counsel admitted on the record that he was aware of the conviction prior to trial and intended to use it to impeach credibility. The resulting

prejudice from this improper conduct not only harmed Brian Birk but also spilled over to Richard Birk, who employed Brian in compliance and payroll functions at Smart Mortgage Centers, Inc.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 59(a) permits the Court to grant a new trial where the verdict is against the weight of the evidence or where errors occurred that substantially impacted the fairness of the trial. Courts have granted new trials in cases involving improperly admitted evidence, particularly where credibility is central to the case.

As recognized in United States v. Johnson, 362 F.3d 968 (7th Cir. 2004):

"Admitting the conviction without following Rule 609(b)'s strictures was error, and that error affected the outcome."

The Seventh Circuit emphasized that a conviction more than ten years old is presumptively inadmissible, and without proper notice and a balancing of probative value versus prejudice, its introduction is reversible error.

Similarly, United States v. Polichemi, 219 F.3d 698, 704 (7th Cir. 2000), explains:

"When inadmissible evidence is placed before a jury, especially without proper procedural safeguards, and the evidence is likely to have had a substantial impact on the jury's verdict, a new trial is warranted."

## III. ARGUMENT

*A. Counsel's Misconduct Violated Rule 609(b) and Prejudiced the Jury*

Mr. Rogosa asked Brian Birk, "Have you ever been convicted of a federal crime?" Brian Birk answered affirmatively before any objection or sidebar occurred. It was only after the answer was given that the Court initiated a sidebar, during which the following facts were established:

- The conviction was for money laundering, dated 2007, with release from confinement in 2010.
- Mr. Rogosa failed to give the required advance written notice under Rule 609(b).
- No motion in limine was filed to allow the Court to weigh admissibility in advance.
- Mr. Rogosa admitted he was aware of the conviction before trial.
- Mr. Rogosa expressly told the Court: "This would have impeached the witness' credibility."

The judge recognized the violation, stating:

"You didn't satisfy the notice requirement."

Yet, the jury had already heard the damaging answer.

*B. Spillover Prejudice to Richard Birk Justifies a New Trial*

Richard Birk was not merely a co-defendant — he is the father and employer of Brian Birk. Brian holds a central role in payroll and compliance at Smart Mortgage Centers, Inc., reporting directly to Richard. Once the jury heard that Brian had been convicted of a federal crime, the natural inference was that Richard Birk knowingly entrusted company oversight to a felon, thereby damaging Richard's own credibility, judgment, and trustworthiness. The federal government approved Brian Birk for employment with Smart Mortgage Centers, Inc in 2010. Yet, Mr Rogosa felt the necessity to divulge a conviction that was over 15 years old without approval from the court.

This form of spillover prejudice is well-recognized. See United States v. Breinig, 70 F.3d 850, 853 (6th Cir. 1995):

"If a codefendant suffers prejudice due to the improper admission of evidence against another defendant, a new trial may be warranted."

*C. Curative Instruction Was Ineffective*

The Court offered a curative instruction, but as the Seventh Circuit made clear in Stone, such instructions are inadequate where credibility is irreparably damaged. The conviction was not simply background information; it directly impacted the jury's assessment of whether the defendants, including Richard Birk, acted willfully or in good faith.

As Brian Birk stated on the record:

"Immediately, regardless of him asking if I was a criminal or whatever he asked and I say 'yes,' the credibility from the jury is completely lost on my end."

The jury's perception of both defendants was contaminated by this improper disclosure.

## IV. CONCLUSION

Because Plaintiffs' counsel knowingly violated evidentiary rules to introduce highly prejudicial, inadmissible information, and because that information damaged Richard Birk through direct association, Defendant respectfully requests that the Court grant a new trial.

WHEREFORE, Defendant Richard Birk respectfully requests that this Court grant his Motion for New Trial pursuant to Federal Rule of Civil Procedure 59(a), and for any such further relief as the Court deems just and proper.

Respectfully submitted,

Date: 6-12-2025

Richard Birk, Pro Se

2714 Rolling Meadows Dr. Naperville, IL 60564

RIchie@smartmtgs.net

331-643-6447

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRIAN NOE, et al.,                    )  Case No. 21 CV 01668
                                      )
                Plaintiffs,           )
                                      )
            v.                        )  EXCERPT TRANSCRIPT
                                      )
SMART MORTGAGE CENTERS, INC.,         )
et al.,                               )  Chicago, Illinois
                                      )  June 20, 2025
                Defendants.           )  1:49 p.m.


        EXCERPT TRANSCRIPT OF PROCEEDINGS - Jury Trial

            BEFORE THE HONORABLE EDMOND E. CHANG

APPEARANCES:

For the Plaintiffs:     MITCHELL SANDLER PLLC
                        BY:  MR. ALEXANDER ROGOSA
                        2020 K St. NW, Suite 760
                        Washington, D.C. 20003
                        (202) 886-5294

                        CHRISTENSEN HSU SIPES, LLP
                        BY:  MR. DANIEL R. SARTHER
                        224 South Michigan Avenue, Suite 1300
                        Chicago, Illinois 60604
                        (630) 651-2812

For the Defendants Pro
Se:                     MR. RICHARD BIRK

                        MR. BRIAN BIRK


Court Reporter:         JUDITH A. WALSH, CSR, RDR, F/CRR
                        Official Court Reporter
                        219 South Dearborn Street, Room 2342
                        Chicago, Illinois 60604
                        Telephone:  (312) 702-8865
                        judith_walsh@ilnd.uscourts.gov
                            *   *   *   *   *
            PROCEEDINGS REPORTED BY STENOTYPE
    TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings were heard which are not herein transcribed.)

(Proceedings heard in open court:)

THE COURT: Okay. You can call the next witness.

MR. ROGOSA: Brian Birk, your Honor.

THE COURT: All right. Mr. Birk, come on up. Before you sit down, please raise your right hand.

(Witness sworn.)

THE WITNESS: I do.

THE COURT: Have a seat.

BRIAN BIRK, PLAINTIFF'S WITNESS, DULY SWORN,

DIRECT EXAMINATION

BY MR. ROGOSA:

Q. Can you state your name for the record, please?

A. Sure. Brian Birk.

(Proceedings were heard which are not herein transcribed.)

MR. R. BIRK: That's all.

THE COURT: All right. Recross.

RECROSS-EXAMINATION

BY MR. ROGOSA:

Q. Mr. Birk, have you ever been convicted of a federal crime?

A. Have I ever been?

Q. Yes.

A. I have.

THE COURT: Let's take a sidebar.

(Proceedings heard at sidebar:)

THE COURT: Mr. Richard Birk?

What do you expect the answer to be?

MR. ROGOSA: That he has, your Honor, and that it goes to his credibility.

THE COURT: So I -- maybe I missed something. Was there a motion in limine along the lines of Rule 609 to offer this impeachment?

MR. ROGOSA: There was not, your Honor.

THE COURT: Okay. What was the conviction for? Mr. Rogosa, you can make your proffer. What was the conviction for?

MR. ROGOSA: Money laundering, your Honor.

THE COURT: And when did it -- when was the conviction?

MR. ROGOSA: I believe it was 2017, your Honor.

MR. B. BIRK: That's not correct.

THE COURT: Yeah, just one -- I'll get you to respond in a second.

And was it here in the Northern District?

MR. ROGOSA: Yes, your Honor.

THE COURT: Okay. What's the case number?

MR. ROGOSA: Sorry, your Honor. I'm having difficulty pulling it back up through Pacer right now. It's not working on the wifi.

THE COURT: Okay. One moment.

All right. It looks like the case number is 2007, 311; CR 311.

MR. ROGOSA: Yes. That's it, your Honor.

THE COURT: Okay. And the sentence was imposed, judgment was entered on November 25th, 2008.

MR. ROGOSA: Yes, your Honor.

THE COURT: Yeah, I think you had said 2017, but okay. So...

MR. ROGOSA: Sorry, your Honor. I had meant 2007 is when the case was from, but it did terminate in 2008.

THE COURT: Okay. And when was he released from confinement? So it was a sentence of 30 months.

MR. ROGOSA: Yes, to 2011, your Honor. The confinement release was earlier, though.

THE COURT: Okay. So --

MR. ROGOSA: In 2009, your Honor.

THE COURT: So the conviction and the release from confinement is more than ten years ago.

MR. ROGOSA: Yes, your Honor. I understand.

THE COURT: So then in order to use it, you would have to satisfy 609(b) which does include a notice requirement. And so had you given Mr. Brian Birk notice that you intended to use the conviction under Rule 609?

MR. ROGOSA: That was not provided, your Honor.

THE COURT: Because typically, you'd have a motion in

limine when trying to use 609 impeachment, indeed even in circumstances where we're not outside the ten-year period so that the Court can vet that without it being put in front of the jury.

And so the -- so what basis at this point is there for the use of this conviction under Rule 609?

MR. ROGOSA: Your Honor, this would have impeached the witness' credibility.

THE COURT: Right, but it doesn't -- you didn't satisfy the notice requirement.

MR. ROGOSA: Yes, your Honor, so I'll withdraw the question.

MR. R. BIRK: Can I make a comment, your Honor?

THE COURT: No, Mr. Richard Birk, you can't, but Mr. Brian Birk, do you want to -- all right. What's your response? They're going to withdraw the question. Do you want an instruction?

MR. B. BIRK: Withdraw the question? I already answered the question right in front of the jury.

THE COURT: Well, yeah, you could have objected to the question. And no doubt if you had a lawyer, the lawyer would have objected. So you answering it in front of the jury is -- that is unfortunately on you. But do you want me to instruct the jury to entirely disregard the question and the answer?

MR. B. BIRK: Honestly, I don't even know how to

answer that at this point because of the fact that Mr. Rogosa didn't have permission to even ask the question.

THE COURT: Yeah, I don't -- I cannot advise you. All I'm -- I'm giving you the option for me to instruct the jury to entirely disregard the question and the answer.

MR. B. BIRK: Is there any other options?

THE COURT: I'm not your lawyer, Mr. Brian Birk, and so --

MR. B. BIRK: Okay. So --

THE COURT: If I were your lawyer, I might think of other options, but I'm not. And so what I will, though, offer you is an instruction to the jury to disregard the question and the answer. Do you want that?

MR. B. BIRK: It will be still on the record, correct?

THE COURT: When you say "on the record" so, of course, it will be in the transcript. Unlike the TV and the movies where people say, "Strike that," there's no striking things from the transcript, but the jury then would not consider it because it's not evidence.

MR. B. BIRK: Being that the jury heard me answer the question, it immediately gives me a disadvantage in this case. So that's fine that you can go ahead and strike it.

THE COURT: So you do want me to instruct the jury to disregard?

MR. B. BIRK: I do want you to --

THE COURT: I will --

MR. B. BIRK: -- if you could, please.

THE COURT: I will do that.

(Proceedings heard in open court:)

THE COURT: Ladies and gentlemen, entirely disregard the last question and answer. Put it out of your mind.

Any other questions?

MR. ROGOSA: No, your Honor. I don't have anything further for him.

THE COURT: Okay. Anything else, Mr. Brian Birk?

MR. B. BIRK: I have nothing else to say, your Honor.

THE COURT: Okay. And then Mr. Richard Birk, anything else?

MR. R. BIRK: Yes, I do.

THE COURT: So I don't believe there was any further recross beyond that question.

MR. ROGOSA: There was not, your Honor.

THE COURT: Yeah. So --

MR. R. BIRK: But this would be something that is required because of the statement they made. It went beyond that list of questions unless that accusation was made.

MR. B. BIRK: I'd rather have --

THE COURT: That -- the last question and answer has been stricken and, therefore, there was no recross and, therefore, there's no more questioning to be had. So please

have a seat.

MR. R. BIRK:  Okay.

THE COURT:  Okay.  Mr. Brian Birk, you're excused. You can step down.

THE WITNESS:  Thank you, your Honor.

(Witness excused.)

(Proceedings were heard which are not herein transcribed.)

* * * * *

I certify that the foregoing is a correct **excerpt** transcript from the record of proceedings in the above-entitled matter.

*/s/Judith A. Walsh*                          *June 3, 2025*

_____          _____
Judith A. Walsh, CSR, RDR, F/CRR                Date
Official Court Reporter

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRIAN NOE, et al.,                    )  Case No. 21 CV 01668
                                      )
                Plaintiffs,           )
                                      )
                v.                    )  EXCERPT TRANSCRIPT
                                      )
SMART MORTGAGE CENTERS, INC.,         )
et al.,                               )  Chicago, Illinois
                                      )  June 21, 2025
                Defendants.           )  8:52 a.m.


        EXCERPT TRANSCRIPT OF PROCEEDINGS - Jury Trial

           BEFORE THE HONORABLE EDMOND E. CHANG

APPEARANCES:

For the Plaintiffs:    MITCHELL SANDLER PLLC
                       BY:  MR. ALEXANDER ROGOSA
                       2020 K St. NW, Suite 760
                       Washington, D.C. 20003
                       (202) 886-5294

                       CHRISTENSEN HSU SIPES, LLP
                       BY:  MR. DANIEL R. SARTHER
                       224 South Michigan Avenue, Suite 1300
                       Chicago, Illinois 60604
                       (630) 651-2812

For the Defendants Pro
Se:                    MR. RICHARD BIRK

                       MR. BRIAN BIRK


Court Reporter:        JUDITH A. WALSH, CSR, RDR, F/CRR
                       Official Court Reporter
                       219 South Dearborn Street, Room 2342
                       Chicago, Illinois 60604
                       Telephone:  (312) 702-8865
                       judith_walsh@ilnd.uscourts.gov
                             *   *   *   *   *
                PROCEEDINGS REPORTED BY STENOTYPE
     TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard in open court:)

THE CLERK: Calling case No. 21 Civil 1668, Noe versus Smart Mortgage Centers Inc.

THE COURT: Okay. Let's get appearances.

MR. ROGOSA: Good morning, your Honor. Alexander Rogosa on behalf of the plaintiffs.

MR. SARTHER: Daniel Sarther on behalf of the plaintiffs.

MR. R. BIRK: Richard Birk, pro se.

MR. B. BIRK: Brian Birk.

THE COURT: Okay. Good morning. And I'll note that the plaintiffs' representative, Ms. Pruitt, is here as well.

All right. A couple things to take up. First, the defendants filed a motion for mistrial last night or more precisely, they emailed to the pro se email account and -- let's see. It was received by Docketing at 11:35 p.m.

So just as a logistics procedural matter, Mr. Brian Birk, when I asked you at the pretrial conference a couple weeks ago whether you are an e-filer and that you were filing through the system it -- I thought based on your answers that you were meaning that you can just upload.

MR. B. BIRK: I cannot.

THE COURT: Yeah, so that is not what the import of your answers were on that. So I didn't know that you had to email to the pro se email account.

MR. B. BIRK: As -- when you say email to the -- so I upload all of my dockets into the pro se area where it says that you're supposed to upload your dockets for pro se. So every single time I do that, I've noticed that when I do upload them, it takes usually in some cases 24 hours for the docket to even get into Pacer, if not sometimes 48 hours.

THE COURT: Yeah, so I think what is happening is that you -- yeah, so you're not linked to what we call Pacer. There is a portal that you use. You're talking about the portal, right?

MR. B. BIRK: I understand. So I have -- I have the Pacer, the portal, but from my understanding as a pro se litigant, it will only allow me to upload that document into a case that's already in filing. And I was noticing myself over time because I was wondering why it was taking so long for the documents to get into Pacer, you know, as far as the docket number.

And at times I was looking at 48 hours and I was starting to -- that's why I sent the email last night in an emergency because I was thinking to myself, well, what if these two documents don't show up for the next 24 to 48 hours which I obviously knew you said at 8:00 p.m. you wanted the first document, and it takes us -- it took us three hours to get home.

THE COURT: Yeah, right. And so that -- the

difference is that unlike an e-filer which lawyers, most lawyers are e-filers and some pro se litigants become e-filers too, that goes right to the docket, okay, to what we call CM/ECF. You don't have that capability. I thought you did.

And so because you don't have that capability and you're uploading it to this portal, a human being then takes that and puts it on the docket. And so there are docketing staff members who are taking the hundreds of pro se filings and accomplishing that. So sometimes that's why it takes longer because there's another step in there. All right. So, okay, I think I understand what happened, but it was submitted to the portal at 8:07 p.m.

But so at any rate, though, on the statute of limitations which was, that was filed at 8:07 p.m., it was after the deadline. Having said that, obviously I was looking at the docket after 8:00 p.m., so I would have noticed it had it been filed.

So first I'll ask the plaintiffs for a response on the citation to that *Harkins v. Riverboat Services* case. Have you even seen it? Did you get a copy of that?

MR. ROGOSA: No, your Honor.

THE COURT: Oh, all right.

MR. ROGOSA: On the -- on the statute of limitations?

THE COURT: Yeah. So you somehow got a copy of the motion for mistrial?

MR. ROGOSA: Yes, because he emailed that to Mr. Wing and cc'd us.

THE COURT: Okay. I see. Yeah, right, and really -- so, Mr. Brian Birk, did you email a copy of the statute of limitations filing to the other side?

MR. B. BIRK: I did not.

THE COURT: So you are supposed to serve the other side with your filing. So they have no idea what I'm talking about at this point. So let me just, I'll put it on the record then. And it is being posted on the docket shortly because I asked Docketing to just elevate those -- the two filings in their queue to be a priority.

The -- so this brief by the defendants on the statute of limitations argues that the -- it's the opt-ins, the filing of the written consents that triggers the commencement of the action which is what 216 -- 256 says which is why I have held previously that that is the pertinent date for the statute of limitations.

Having said that, the Seventh Circuit has not decided the issue because this *Harkins* case had to do with plaintiffs who had not filed consents at all until after the expiration of the statute of limitations completely. And it was not at issue as to whether or not the filing of the lawsuit tolls the statute of limitations for those who then timely file opt-ins.

So that's not yet been decided by the Seventh Circuit.

And so for now, I'm going to stick with the instruction that uses the March 26, 2021, filing date of the lawsuit as the pertinent date for the statute of limitations.

As I pointed out in the order last night, the defendants had not raised this issue even though they were put on notice of it in the summary judgment briefing and also the proposed pretrial order damages charts. They did not object to the jury instructions which had simply said two years or three years.

And then the last thing I'll say on this is that I can -- I can remit, that is, reduce the damages award after trial if -- in a new trial or remittitur motion the defendants ask for a reduction. And it's just a matter of math in looking at the chart. So I think it is more sensible and appropriate at this point to stick with the March 26, 2021, date. So that's what your closing should be based on.

Second, okay, the motion for mistrial, that was emailed to the plaintiffs. I have just looked at it this morning because it had not been emailed to us. And I do want to understand from -- we may need further exploration of this again after trial. How did this -- how did this come about that -- so, Mr. Rogosa, when did you first learn that there was a federal conviction for Mr. Brian Birk?

MR. ROGOSA: I was told by one of the plaintiffs that there was a federal conviction. I did not just learn at the

counsel table. I did learn -- I was told that previously.

THE COURT: Okay. Was it before -- well, around when did you find out?

MR. ROGOSA: It would have been in the last, like, two weeks, your Honor. I'm not sure of the exact date.

THE COURT: Okay. I mean, you know, two weeks or so, that is plenty of time to have vetted it with the Court and to -- and given the timing -- because your response says that it was just slightly outside the 609 period. But had you figured out when he was released from custody?

MR. ROGOSA: I actually had that date wrong in my head, your Honor, when we were going over it.

THE COURT: So you learned from one of your clients that Mr. Brian Birk had a federal conviction, and then did you then pin down the facts surrounding it?

MR. ROGOSA: Yes, your Honor. I did initially look it up.

THE COURT: Okay. And so then when you looked it up, then you must have seen that he had a 30-month sentence imposed in 2008 so that roughly speaking, if he surrendered reasonably promptly and so on, he would have been released maybe 2011 at the latest and, yeah, that misses it by four years.

MR. ROGOSA: That's correct, your Honor. I did not originally intend to use that impeachment evidence. It was not going to be part of my calling him as an adverse witness.

THE COURT: On that point, I mean, did you -- you really thought they would not have a direct exam, that Mr. Brian Birk would not have a direct examination?

MR. ROGOSA: I was not sure originally at the time that we were filing the pretrial, your Honor, and going over motions in limine.

THE COURT: Okay. But by the pretrial conference, first, that seems very odd, you know, that you would think that a party would not conduct a direct exam of themselves. And then second, at the pretrial conference, we talked about how the direct exams would be presented.

MR. ROGOSA: Yes, your Honor. So at that time, I did become aware that they were intending to testify.

THE COURT: And so you just had the wrong date in your head when you -- I just -- I'm not understanding why at that point you -- you ought to actually have come to the conclusion that, oh, I can't get this in at all, right?

Direct exam or not, when you were told about the conviction and you looked up the dates, without giving them notice, certainly as of the pretrial conference, how did you think you were going to get this in?

MR. ROGOSA: Well, your Honor, I still thought that as the conviction would go directly to a credibility issue that it was more probative than it was prejudicial.

THE COURT: That's the first part. The second part is

notice.

MR. ROGOSA: I understand that, your Honor. I believed that because this particular conviction was one that had to do with trustworthiness that that was the primary crux. Under 609(1) it does say that any conviction related to trustworthiness is always admissible. I do realize I should have provided written notice beforehand.

THE COURT: 609(b), the limit, the ten-year limit, it applies to across the board including to any crime involving a dishonest act or false statement, right?

MR. ROGOSA: Reviewing the statute, I do agree with that, your Honor.

THE COURT: Okay. So, look, at this point here's what I'm going to do. I'm going to deny the motion for a mistrial without prejudice to filing a new trial motion after the trial based on what happened here. First, the -- what actually came out -- well, actually really, first is that, Mr. Brian Birk, you did not object. You actually answered the question. And it is on you in the first instance to lodge an objection to a question like that.

And second, you -- you answered, the specific sequence of the Q and A was, the question was, "Mr. Birk, have you ever been convicted of a federal crime?"

And then you first asked back, "Have I ever been?"

And then the question was, "Yes."

And then you said, "I have."

And we were cross-talking at that point because I was trying to cut it off, and so I said, "Let's take a sidebar." So the "I have" and "let's take a sidebar," there was some cross-talk, but we should assume the jury heard "I have."

So the jury did not hear that it was a felony. The jury did not hear it was money laundering either. And then I gave an instruction after the sidebar to disregard it. And we do presume that juries typically abide by the instructions.

And also in considering the harm that this question and answer caused, I also should consider the evidence and the particular issues that the jury is being asked to decide. It's better to do that in a new trial motion after the closing arguments. So I'm going to deny the motion for mistrial. We'll keep going, but that does not mean that that blocks you from filing a new trial motion. So in other words, after the trial when you file -- when you file your new trial motion, you can include this argument in there still.

All right. Do you understand?

MR. B. BIRK: I understand completely. I just -- it's unbelievable that an attorney would actually spring something on that especially dealing with, one, you're dealing with a jury that's sitting that is, you're dealing with financial, a financial business and minimum wage and overtime, and he's bringing up the fact that I was a criminal, was charged and

served time or whatever it was. I admitted that I was a felon.

THE COURT: No, you did not. Let me just --

MR. B. BIRK: I said yes, I was.

THE COURT: But the question was, have you been convicted of a federal crime.

MR. B. BIRK: But I said yes.

THE COURT: Yeah, so let me just correct you on that and then you can keep going. So the fact that the crime was a felony, that was not heard by the jury. Proceed.

MR. B. BIRK: Okay. Immediately regardless of him asking if I was a criminal or whatever he asked and I say "yes," the credibility from the jury is completely lost on my end. I don't have anything further to say.

THE COURT: Okay. Yeah, and as I said, juries do -- we do presume that juries follow instructions. And this is one of those instructions that is a clear, disregard the Q and the A. And so it's the type of thing where if, for example, a juror would bring that up during deliberations, the other seven would jump on that juror and say, "The judge told us to disregard that," and then they would move on. So that's one thing to consider.

And then the other thing to consider, as I said, is trying to understand how important is credibility to the particular issues and the evidence that has been submitted. And it's better to do that in the context of a new trial

motion. So you're not giving up any rights. Just make this argument again in the setting of a new trial motion.

MR. R. BIRK: Can I interject something?

THE COURT: Well, since you don't -- well, go ahead.

MR. R. BIRK: Some of the things that were just said by the plaintiffs' attorneys, I question highly.

THE COURT: Yeah, and so, Mr. Richard Birk, I'm just going to interrupt there because you can litigate this in the context of a new trial motion. You can, for example, ask for declarations and under-oath filings to investigate the facts. I'm not -- I don't know if I'll authorize that, but you can ask for things like that to really pin down how is it that the lawyer thought that it was permissible to ask that question.

And so but we're not going to be able to conduct that kind of factual inquiry if indeed I ever have that inquiry conducted, you know, right now, can't do that. So yeah, and again, you're free to file whatever you would like, you know, afterwards as a written proffer.

(Proceedings heard which are not herein transcribed.)

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/Judith A. Walsh                          *June 3, 2025*
_____          _____
Judith A. Walsh, CSR, RDR, F/CRR              Date
Official Court Reporter