BC

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

 FILED 6/13/2025

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

 KG

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

)
)
)    **Case Number**:
)
Plaintiff    )
)    **Judge:**
v.    )
)
)    **Magistrate Judge:**
)
)
Defendant

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

IN THE UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

BRIAN NOE, et al.,

Plaintiffs,

v.

SMART MORTGAGE CENTERS, INC., et al.,

Defendants.

Case No. 21 CV 01668

Judge: Hon. Edmond E. Chang

## NOTICE OF SUPPLEMENTAL ARGUMENT IN SUPPORT OF DEFENDANTS' MOTION FOR NEW TRIAL

NOW COME Defendants Richard Birk and Brian Birk, by and for themselves pro se, to respectfully notify the Court of additional grounds supporting the previously filed Motion for New Trial (Dkt. 340). This supplemental filing is submitted solely to aid the Court in resolving issues of arbitration consistency and fairness raised during trial, and Defendants respectfully submit that no prior leave is required under applicable rules.

## SUPPLEMENTAL ARGUMENT: INCONSISTENT AND IMPROPER ARBITRATION TREATMENT

During proceedings, the Court also suggested that the arbitration agreements may have been unenforceable due to the absence of "Schedule A." On page 11 of the Court's decision regarding arbitration, (Dkt. 204). Judge Shah stated: "Here, the arbitration agreement refers to 'Schedule A,' which was not attached. That is significant. The

arbitration clause is part of a broader agreement—without all parts present, including Schedule A, it is difficult to assess the mutual obligations of the parties, especially regarding pay terms."

However, it must be clarified for the record that Schedule A was solely a commission-based pay plan detailing the percentage (basis points) of compensation per closed loan. Its presence or absence had no bearing on the enforceability of the arbitration clause, which appeared in the main body of the employment agreement. Arbitration clauses are severable and enforceable under the Federal Arbitration Act even when ancillary documents like compensation exhibits are not attached. See Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440 (2006).

The inconsistent treatment of identical arbitration agreements originated in Judge Shah's pretrial ruling. Based on the current record, there is no indication that Judge Chang independently evaluated or revisited the enforceability of those agreements after the case was reassigned to him. The procedural posture established under Judge Shah—despite being inconsistently applied—was adopted without further review. This absence of reconsideration left the inconsistent arbitration enforcement uncorrected and contributed to structural unfairness at trial.

This trial has been bifurcated in a manner that raises further fairness concerns. Plaintiffs Eileen Pruitt, Stephanie Holland, Alan Platt, Shian Jno Lewis, and Ryan Klaic have already gone to trial, while Plaintiffs Brian Noe, Michelle McCue, and Jose Morales have not yet been scheduled. Notably, Plaintiffs Stephanie Holland, Shian Jno Lewis, and Alan Platt previously pursued arbitration solely against Smart Mortgage Centers, Inc., and reportedly settled those claims. Nevertheless, they were allowed to reenter the litigation and proceed to trial—not against the company they arbitrated with, but against the individual defendants Richard Birk and Brian Birk. This procedural whiplash not only contradicts the intent and binding effect of arbitration settlements, but also compounds the prejudice to the individual defendants.

Clarification of Record: Contrary to the Court's general reference, only Richard Birk was a corporate officer of Smart Mortgage Centers, Inc. Brian Birk served as a W-2 employee performing payroll and compliance tasks under corporate leadership. Accordingly, claims against both defendants arise solely from their official conduct within the scope of employment and should fall within the protections of the arbitration agreement.

This phased structure exacerbates the prejudice caused by inconsistent arbitration enforcement and leaves the only defendants, Richard Birk and Brian Birk, vulnerable to

piecemeal litigation that undermines judicial efficiency, introduces conflicting outcomes, and denies defendants the protection to which they were contractually entitled.

- All plaintiffs in this matter—Brian Noe, Eileen Pruitt, Michelle McCue, Jose Morales, Ryan Klaic, Shian Jno Lewis, Alan Platt, and Stephanie Holland—executed the same binding arbitration agreement as a condition of employment with Smart Mortgage Centers, Inc.
- Despite identical agreements, the Court only compelled arbitration as to Lewis, Platt, and Holland, while improperly permitting Noe, Pruitt, McCue, Morales, and Klaic to proceed through a full jury trial without any materially distinct legal justification.
- Compounding this error, Plaintiffs Lewis, Platt, and Holland were permitted to return to trial and participate in a verdict after reportedly settling their claims through arbitration.
- No supplemental agreement, order, or stipulation filed on the record provides a valid legal basis for this inconsistent treatment.

This form of selective enforcement of arbitration directly violates the Federal Arbitration Act, 9 U.S.C. § 2, and binding precedent requiring courts to enforce arbitration provisions consistently. See Epic Systems Corp. v. Lewis, 138 S. Ct. 1612 (2018); AT&T Mobility LLC v. Concepcion, 563 U.S. 333 (2011). It also prejudiced the Defendants by expanding the scope of litigation, misinforming the jury about the scope of disputes, and contributing to confusion and cumulative liability.

Even if the parties later disagreed on how to administer arbitration, such disagreement is not a valid legal basis to bypass arbitration altogether. Once an arbitration agreement is executed, the proper remedy under the Federal Arbitration Act is to compel arbitration (9 U.S.C. § 4) or appoint an arbitrator (9 U.S.C. § 5) if needed. The Court's failure to enforce the arbitration agreements in these circumstances compounded the structural unfairness and left Defendants exposed to a jury trial that should never have occurred.

Furthermore, where a valid arbitration agreement exists, courts have consistently held that it may extend to individual officers and employees of the company when claims arise out of conduct performed within the scope of their employment. See Letizia v. Prudential Bache Securities, Inc., 802 F.2d 1185, 1188 (9th Cir. 1986); Hughes Masonry Co. v. Greater Clark Cty. Sch. Bldg. Corp., 659 F.2d 836 (7th Cir. 1981). Accordingly, the arbitration agreements at issue should have also protected Richard Birk and Brian Birk—who were

sued solely for actions arising from their roles at Smart Mortgage Centers, Inc.—from individual liability in this court proceeding. Their inclusion in a trial jury verdict, despite the arbitration clause, was improper and prejudicial.

Alternatively, Defendants respectfully request that the Court vacate the jury verdict with respect to any plaintiff who executed a valid arbitration agreement—including but not limited to Brian Noe, Eileen Pruitt, Michelle McCue, Jose Morales, and Ryan Klaic—and order those claims to proceed in binding arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 3.

Respectfully submitted,

Date: 6-13-2025

Richard Birk, Pro Se

2714 Rolling Meadows Dr.

Naperville, IL 60564

Richie@smartmtgs.net

331-647-6443

Brian Birk, Pro Se

8650 E. Teal Lane.

Wilmington, IL 60481

Smartmortgagecenters@yahoo.com

630-854-0791

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BRIAN NOE, et al.,

        Plaintiffs,

      v.

SMART MORTGAGE CENTERS, INC., et al.,

        Defendants.

No. 21 CV 1668

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Brian Noe and Eileen Pruitt worked as loan officers for Smart Mortgage Centers. They filed this lawsuit against Smart and two of its officers, alleging that defendants failed to pay them minimum and overtime wages and deducted money from their commissions in violation of the Fair Labor Standards Act, the Illinois Minimum Wage Act, and Illinois's Wage Payment Collection Act. Defendants filed a motion to dismiss based on improper venue, but actually want to compel arbitration.[1] For the reasons discussed below, the motion is granted in part, denied in part.

## I.    Legal Standard

To compel arbitration, a party must show "(1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Druco Restaurants, Inc. v. Steak N Shake*

---

[1] Defendants argue that venue is improper because Noe and Pruitt agreed to arbitrate claims against Smart. Their motion to dismiss is "rooted in enforcement of the arbitration agreement," *Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887, 890 (7th Cir. 2020), and I therefore consider it as one to compel arbitration.

*Enter., Inc.*, 765 F.3d 776, 781 (7th Cir. 2014) (quoting *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006)). The Federal Arbitration Act requires courts "to enforce covered arbitration agreements according to their terms," *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019) (citing 9 U.S.C. § 2), and put arbitration agreements on "equal footing" with other contracts. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). The act reflects "a liberal federal policy favoring arbitration." *Concepcion*, 563 U.S. at 339 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). State-law principles of contract formation decide the validity and scope of an arbitration agreement. *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710–11 (7th Cir. 2019) (citing *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012)).

## II.    Facts

As inside sales loan officers for Smart, Noe and Pruitt sold residential mortgage loans to borrowers from inside the company's offices. [1] ¶¶ 6–7.[2] Noe had the job for six years; Pruitt worked for Smart for less than a year. *Id.* ¶¶ 16–17. Both plaintiffs signed written employment contracts, which are largely identical. *See* [7-1]; [7-2]; [7-3].[3] These contracts include a choice of law provision selecting Illinois law,

---

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of the filings. The facts are taken from plaintiffs' complaint, [1], and the parties' contracts, which were filed with defendants' memorandum. [7-1]; [7-2]; [7-3].

[3] Noe signed an initial contract in 2013, [7-1], and a subsequent agreement five years later. [7-2]. Pruitt signed a single contract in 2019. [7-3].

[7-1] ¶ 19(c); [7-2] ¶ 19(c); [7-3] ¶ 19(c), and a provision requiring that certain disputes be arbitrated at Smart's discretion. [7-1] ¶ 19(i); [7-2] ¶ 19(i); [7-3] ¶ 19(i). The arbitration paragraph reads:

> DISPUTES: Loan Officer agrees that any disputes of the Loan Officer arising under this Agreement shall be handled through arbitration at the election of Smart. Loan Officer agrees that no litigation, suit or other proceeding shall be filed against Smart until such arbitration is concluded in all respects.

*Id.* The contracts include a provision authorizing Smart to make certain deductions from amounts due the loan officer, [7-1] ¶ 7; [7-2] ¶ 7; [7-3] ¶ 7, a compensation plan, [7-1] at 11; [7-2] at 10; [7-3] at 10, and a rider addressing the officer's status under federal and state minimum wage and overtime laws. [7-1] at 12–13; [7-2] at 11–12; [7-3] at 11–12. Noe and Pruitt were paid on commission alone. [1] ¶ 23. From plaintiffs' commissions, Smart deducted costs for filing and penalties for alleged billing, processing, and data entry errors. *Id.* ¶ 27. Plaintiffs routinely worked more than forty hours in a workweek, but Smart failed to track their hours or to pay them minimum and overtime wages. *Id.* ¶¶ 25–26.

Plaintiffs filed this lawsuit against Smart seeking unpaid minimum and overtime wages and other damages under the FLSA and Illinois's Minimum Wage Act and Wage Payment and Collection Act. [1] at 19. Noe and Pruitt want to represent two classes of similarly situated loan officers. *Id.* ¶¶ 34–60. Plaintiffs also named as defendants Richard and Brian Birk, the president and vice president of Smart. [1] ¶¶ 9–10. The Birks are not parties to the contracts. *See* [7-1]; [7-2]; [7-3].[4]

---

[4] Richard Birk signed the contracts in his official capacity as president of Smart. *See* [7-1] at 13; [7-2] at 12; [7-3] at 12.

### III.  Analysis

#### A.  The Arbitration Agreement is Enforceable

Plaintiffs refuse to proceed to arbitration, [15] at 1–2, 9,[5] and so the issues here are the enforceability and scope of the arbitration clause in Pruitt's and Noe's contracts. *See Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). Arbitration agreements are enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Plaintiffs contend that the arbitration clause can't be enforced because it is unconscionable. [15] at 11–14. According to Noe and Pruitt, the provision is impermissibly vague since it doesn't spell out the cost, timing, or manner of arbitration, allows defendants to choose when and whether to arbitrate, and was "designed to unfairly surprise." *Id*. Plaintiffs also object to an application of the provision that would bar them from asserting class action claims. *Id*.

In Illinois, a contract does not fail for vagueness "if the court is able from the terms and provisions thereof, under proper rules of construction and applicable rules of equity, to ascertain what the parties have agreed to do." *Schulze & Burch Biscuit Co. v. Tree Top, Inc.*, 831 F.2d 709, 716 (7th Cir. 1987) (quoting *Gale v. York Center Cmty. Coop., Inc.*, 21 Ill.2d 86 (1961)). Plaintiffs are correct that the disputes provision is skimpy on the details. *See* [7-1] ¶ 19(i); [7-2] ¶ 19(i); [7-3] ¶ 19(i). But the FAA fills in some gaps, *see Schulze*, 831 F.2d at 716, and the contract is clear that

---

[5] While plaintiffs are willing to arbitrate their claims on a class-wide basis, they refuse to proceed to individual arbitration. [15] at 1–2, 9.

Noe, Pruitt, and Smart agreed to arbitrate a broad swath of issues. [7-1] ¶ 19(i); [7-2] ¶ 19(i); [7-3] ¶ 19(i). That's enough to survive a vagueness challenge. *See Schulze*, 831 F.2d at 715–16 (enforcing an arbitration clause that read "ALL DISPUTES UNDER THIS TRANSACTION SHALL BE ARBITRATED IN THE USUAL MANNER"); *see also Green v. U.S. Cash Advance Illinois, LLC*, 724 F.3d 787, 793 (7th Cir. 2013) ("Section 5 [of the FAA] allows judges to supply details in order to make arbitration work.").

Is the arbitration agreement otherwise unconscionable? A contract can be unconscionable based on procedure, substance, or both. *See Kinkel v. Cingular Wireless LLC*, 223 Ill.2d 1, 20–28 (2006). A contract is procedurally unconscionable "where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and also takes into account a lack of bargaining power." *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 777 (7th Cir. 2014) (quoting *Razor v. Hyundai Motor Am.*, 222 Ill.2d 75 (2006)). Substantive unconscionability refers to terms "which are inordinately one-sided in one party's favor." *Razor*, 222 Ill.2d at 100.

Plaintiffs' arguments for unconscionability mostly turn on a misunderstanding about what defendants are seeking. Noe and Pruitt are convinced that defendants want to bar class action claims by requiring them to arbitrate on an individual basis, [15] at 11–14, but that's not the issue here. No class has been certified in this case, and defendants are trying to compel the plaintiffs—Noe and Pruitt—to arbitrate *their* claims, not to enforce a class action waiver. [7]. Plaintiffs' other arguments for

unconscionability don't add up.[6] The provision isn't procedurally unconscionable because Noe and Pruitt have not alleged a lack of bargaining power or shown why the provision was difficult to understand. [15] at 11–14. True, the clause is short on detail, but that doesn't mean that plaintiffs weren't aware that they were agreeing to arbitrate issues that might arise with their employer. *See Jackson, LLC*, 764 F.3d at 781; *Schulze & Burch Biscuit Co. v. Tree Top, Inc.*, 831 F.2d 709, 716 (7th Cir. 1987). Concerning the substance of the provision, Smart may choose whether to arbitrate certain claims, but the agreement does not give it control over the process. Neither the vagueness of the arbitration procedures nor the discretion given to Smart constitutes terms that are "inordinately one-sided." *Razor*, 222 Ill.2d at 100; *see Carter v. SSC Odin Operating Co., LLC*, 976 N.E.2d 344, 350–53 (2012) (finding an arbitration agreement enforceable where a plaintiff's promise to arbitrate was not met with a reciprocal promise by a defendant); *Morgan v. Bill Kay Chrysler Plymouth,* No. 01 C 3871, 2002 WL 31133102, at *4 (N.D. Ill. July 17, 2002) (a similar provision was not unconscionable under Illinois law). The arbitration agreement is not impermissibly vague or unconscionable, and is enforceable.

---

[6] The cases cited by plaintiffs are distinguishable. Unconscionability wasn't at issue in *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326 (1980) or in *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004). The question in *Kinkel v. Cingular Wireless, LLC* was the unconscionability of a class action waiver, which isn't a factor in this case. 223 Ill.2d 1 (2006). The rule from *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 80-81 (1998) is specific to the context of collective bargaining agreements. *See Vega v. New Forest Home Cemetery, LLC*, 856 F.3d 1130 (7th Cir. 2017).

**B.    The Arbitration Agreement Covers Plaintiffs' Claims Against Smart**

Plaintiffs' contracts include an enforceable arbitration clause. Do their claims against Smart fall within the scope of that agreement? Noe and Pruitt say no for two reasons: first, because their disputes arise under federal and state statutes, not the employment contracts, [15] at 4–7; second, because plaintiffs are asserting class action claims, and the agreement is silent as to such claims. *Id.* at 8–9.[7]

Illinois contract law decides whether the arbitration clause in plaintiffs' contracts extends to a given dispute. *See Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (citing *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 662 (7th Cir. 2002)). Whether plaintiffs' statutory claims are arbitrable depends on "the relationship of the [claims] to the subject matter of the arbitration clause," *Gore*, 666 F.3d at 1036 (quoting *In re Oil Spill by the "Amoco Cadiz" Off the Coast of France March 16, 1978*, 659 F.2d 789, 794 (7th Cir. 1981)), and I must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Int'l Bhd. of Elec. Workers Loc. 2150 v. Next Era Energy Point Beach, LLC*, 762 F.3d 592, 594 (7th Cir.

---

[7] Plaintiffs also argue that Smart has implicitly waived its right to arbitrate because it has filed suit against Noe and Pruitt in other cases. [15] at 14–16. While a party can waive its right to arbitrate by dragging its feet on the way to arbitration or otherwise "acting inconsistently with the right to arbitrate," *Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887, 891–93 (7th Cir. 2020), defendants have not done so here. That Smart chose to resolve other matters against plaintiffs in court, rather than through arbitration, does not waive its right to arbitrate the claims in this case. Nothing required the company to arbitrate all disputes that arose with Noe and Pruitt. *See* [7-1]; [7-2]; [7-3]. Smart didn't drag its feet in this case, either: it sought arbitration in its first response to plaintiffs' complaint. [6]. Smart has not waived its right to arbitration.

2014) (quoting *United Steel, Paper and Forestry, Rubber, Mfg., Energy Allied Indus. And Serv. Workers Intern. Union v. TriMas Corp.*, 531 F.3d 531, 535 (7th Cir. 2008)). In the case of broad arbitration clauses, courts "presume arbitrability." *Id.* (citing *AT & T Techs., Inc. v. Commnc'ns Workers of America*, 475 U.S. 643, 649 (1986)). But arbitration is essentially a matter of consent and "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute.*" *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010).

The arbitration clause in the contracts covers "any disputes of the Loan Officer arising under this Agreement." [7-1] ¶ 19(i); [7-2] ¶ 19(i); [7-3] ¶ 19(i). This broad language does not restrict coverage to contractual claims. *See Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993) (Claims that "arise out of" an agreement include "all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se."). It's true that defendants owed duties to plaintiffs that were independent of their employment agreements. But statutory claims, including those arising under the FLSA and Illinois wage laws, may be subject to an enforceable arbitration agreement. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 627 (1985) ("[A]bsent ... compelling considerations, the [FAA] itself provides no basis for disfavoring agreements to arbitrate statutory claims."); *Koveleskie v. SBC Cap. Mkts., Inc.*, 167 F.3d 361, 364 (7th Cir. 1999) (finding employment-related discrimination claims under Title VII arbitrable, and that "[t]he party challenging arbitration has the burden of showing that it is precluded");

*Marzano v. Proficio Mortg. Ventures, LLC*, 942 F.Supp.2d 781, 788–92 (N.D. Ill. 2013) (FLSA claims were arbitrable based on a broad arbitration agreement).[8] What matters here is the relationship between the facts underlying plaintiffs' claims and the agreements that they signed. *See Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 910 (7th Cir. 1999); *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1036 (7th Cir. 2012) (finding an Illinois statutory fraud claim arbitrable under a broad arbitration agreement where the facts underlying the fraud allegation were based on the parties' contract).

Noe and Pruitt signed a broad arbitration clause and their statutory claims are inextricably linked to the subject matter of the contracts—their employment by Smart. The issues underlying plaintiffs' statutory claims—the rate and manner of pay, hours worked, and deductions from commissions—are all addressed in the contracts. *See* [7-1]; [7-2]; [7-3]. Noe and Pruitt's minimum and overtime wage claims are disputes that arise under their agreement because they concern the wages Smart owed plaintiffs as Smart's employees. *See* [1] ¶¶ 40–75. Similarly, their claims under the Illinois Wage Payment Collection Act are arbitrable because they are grounded on the commission payment scheme created by the employment contracts. *See id.* ¶¶ 76–82. Noe and Pruitt agreed to arbitrate disputes arising under their

---

[8] Plaintiffs' reliance on forum selection case law is not helpful because the rules governing the interpretation of forum selection clauses are different than those applicable to arbitration agreements. While it's true that an arbitration clause is "a specialized forum selection clause," *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 774 (7th Cir. 2014), courts assess the coverage of arbitration clauses in light of the FAA's "liberal federal policy favoring arbitration." *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

agreements; their claims here center on matters that the contracts clearly addressed, and so this lawsuit against Smart falls within the scope of the arbitration provision and is subject to arbitration.

The precise parameters of that arbitration—the arbitrator, rules, and status of class action claims—remain to be decided. Neither party has moved to arbitrate class claims and so I do not reach that issue. Plaintiffs argue that forcing them to arbitrate their individual disputes with Smart constitutes a "silent class waiver," [15] at 9, but that's not accurate.[9] Noe and Pruitt cannot maintain this class action in their names while arbitrating with Smart, but defendants have not moved to compel arbitration on a class-wide basis (or prohibit it). Whether class arbitration is available is a separate question for the court to answer if a party seeks to arbitrate on a class wide basis (or seeks to bar class arbitration as a matter of contract). *See Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 506–11 (7th Cir. 2018). Although plaintiffs assume Smart is trying to stop class arbitration, Smart hasn't committed itself to that position. The parties have not fully briefed this issue.

Noe and Pruitt also make arguments about the procedures of arbitration, but these questions are not necessarily for me to answer. Again, the parties have not fully addressed whether the contracts' provision for arbitration at the election of Smart sets a limit on the type of arbitration or if the choice between binding and nonbinding arbitration amounts to a procedural issue, one that "[grows] out of the dispute and

---

[9] The cases plaintiffs cite are not relevant here because they concern whether a contract requires class arbitration. *See, e.g., Lamps Plus v. Varela*, 139 S. Ct. 1407 (2019). Neither party has moved to arbitrate on a class-wide basis in this case.

[bears] on its final disposition" and is presumptively for an arbitrator to decide. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)); *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion) (finding a question about the "kind of arbitration proceeding the parties agreed to" which did not "concern a state statute or judicial procedures" to be fit for arbitration); *Lumbermens Mut. Cas. Co. v. Broadspire Mgmt. Servs., Inc.*, 623 F.3d 476, 482 (7th Cir. 2010). Or maybe the contract is one that provides no details, leaving me with the authority to supply them under Section 5 of the FAA (if a party asks). *See* 9 U.S.C. § 5; *Schulze & Burch Biscuit Co. v. Tree Top, Inc.*, 831 F.2d 709, 716 (7th Cir. 1987). The contract's reference to litigation after arbitration suggests that the parties expected contested proceedings to follow arbitration, perhaps a sign that binding arbitration was not part of the bargain. But since defendants are not asking to compel a certain type of arbitration, all of these issues are unresolved.

The agreement is enforceable, plaintiffs' claims against Smart fall within the scope of the arbitration clause, and defendants' motion to compel is granted as to the claims against Smart.

### C.    The Non-Party Defendants Cannot Compel Arbitration

The arbitration clause is enforceable against the parties to the contracts: Noe, Pruitt, and Smart. Non-parties—Richard and Brian Birk, officers of Smart—have also moved to compel arbitration of plaintiffs' claims against them. [6]. In Illinois, generally only the parties to an arbitration agreement can compel arbitration. *See*

11

*Sosa v. Onfido, Inc.*, 8 F.4th 631, 639 (7th Cir. 2021); *Carter v. SSC Odin Operating Co., LLC*, 976 N.E.2d 344, 359 (2012). The Birks say they can compel plaintiffs to arbitrate because Noe and Pruitt allege "substantially independent and concerted misconduct by both" Smart and the Birks, and, alternatively, because the Birks are the agents of a principal (Smart) that is a party to the arbitration agreement. [7] at 5 (citing *Hoffman v. Deloitte & Touche, LLP*, 143 F.Supp.2d 995 (N.D. Ill. 2001); *Hughes Masonry Co., Inc. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836 (7th Cir. 1981)).

"Traditional principles of state law" decide whether the Birks (non-parties) can enforce the arbitration agreement against plaintiffs. *Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)). Both agency and equitable estoppel are Illinois doctrines under which a non-signatory can enforce an arbitration agreement. *See Sosa*, 8 F.4th at 639 (citing *Ervin v. Nokia, Inc.*, 349 Ill.App.3d 508 (1st Dist. 2004)). Defendants' agency argument is undeveloped, and it fails because defendants have not offered evidence that Smart had control and authority over the Birks' work. *See Sosa*, 8 F.4th at 641 ("[T]he elements of control and authority are essential to establish agency" in Illinois.). The complaint describes Richard Birk as the president of Smart, [1] ¶ 9, and Brian Birk as vice president, *id.* ¶ 10, and Richard signed each of the contracts at issue in his official capacity. *See* [7-1] at 13; [7-2] at 12; [7-3] at 12. But job titles and signatures alone do not show the required elements; without showing control and

12

authority, the Birks cannot qualify for the agency exception. *See Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998).

Defendants' estoppel argument also fails. To prove estoppel, defendants needed to show that Noe and Pruitt induced the Birks to rely to their detriment on statements or conduct made by plaintiffs. *See Sosa*, 8 F.4th at 641 (citing *Ervin*, 349 Ill.App.3d 508).[10] Plaintiffs' agreements with Smart did not include any representations that would induce the Birks to rely on the arbitration provision, and defendants have not identified evidence that they detrimentally relied on plaintiffs' representations (for good reason, given the procedural posture of the case). The Birks were not parties to the arbitration agreement with Noe and Pruitt and have not shown why they have the right to compel plaintiffs to arbitrate claims against them.

The motion to compel is denied as to plaintiffs' claims against Richard and Brian Birk.

---

[10] The cases cited by defendants do not control. *Hoffman v. Deloitte & Touche, LLP*, involved a federal standard for estoppel that has not been accepted in Illinois. 143 F.Supp.2d 995 (N.D. Ill. 2001); s*ee Sosa*, 8 F.4th at 641–42. *Hughes Masonry Co., Inc. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836 (7th Cir. 1981) has been undermined by the United States Supreme Court's decision in *Arthur Andersen. Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 753–55 (7th Cir. 2017) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009)). *Hughes Masonry* is also factually distinct: that case involved a party seeking to manipulate the arbitration process to its advantage by selectively avoiding arbitration, but Noe and Pruitt are attempting to avoid individual arbitration altogether, not take advantage of their contractual promises.

## IV.    Conclusion

Defendants' motion to compel arbitration, [6], is granted in part and denied in part. Plaintiffs must arbitrate their claims with Smart and this case is stayed with respect to those claims pending arbitration.[11] Smart, Noe, and Pruitt shall file a report on the status of arbitration proceedings on October 12, 2021, and if any party believes additional motion practice is necessary to settle the scope of arbitration, an appropriate motion should be filed by October 12, 2021. Plaintiffs are not compelled to arbitrate their claims against Richard and Brian Birk. The Birks shall file an answer by October 12, 2021.

ENTER:

_____

Manish S. Shah
United States District Judge

Date:  September 21, 2021

---

[11] The proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings pending arbitration rather than to dismiss outright. *See Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 318 (7th Cir. 2002); *Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 732 n.7 (7th Cir. 2005); 5C Charles Alan Wright et al., *Federal Practice and Procedure* § 1360 (3d. ed.).

14