| | | |
|---|---|---|
| BRIAN NOE, *et al.*, | : | |
| | : | No. 1:21-cv-01668 |
| Plaintiffs, | : | |
| | : | Honorable Edmond E. Chang |
| v. | : | |
| | : | |
| SMART MORTGAGE CENTERS, | : | |
| INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFFS' MOTION AND MEMORANDUM OF LAW FOR SUMMARY
JUDGMENT AGAINST RICHARD BIRK AND BRIAN BIRK AND FOR
DEFAULT JUDGMENT AGAINST SMART MORTGAGE CENTERS, INC.**

Plaintiffs Eileen Pruitt, Ryan Klaic, Stephanie Holland (Picardo), Shian Jno-Lewis, and Alan Platt (collectively "Plaintiffs") move for summary judgment against Defendants Richard Birk and Defendant Brian Birk (together "the Birks") on the issue of individual liability for violating the Illinois Minimum Wage Law ("IMWL"), the Illinois Wage Payment and Collection Act ("IWPCA"), for damages for these counts, and for default judgment to be entered against Defendant Smart Mortgage Centers Inc. ("SMC") for damages resulting from its violations of the Federal Labor and Standards Act ("FLSA"), IMWL, and IWPCA. Plaintiffs file this Motion and Memorandum of Law pursuant to the Court's order on post-trial briefing. *See* ECF No. 335. Plaintiffs successfully demonstrated through prior summary judgment briefing and in trial that the Birks were individually and willfully liable for FLSA violations. The legal standards for individual liability confirm that if an individual is liable for a FLSA violation, they would similarly be liable for a violation of the IMWL and IWPCA regarding their compensation. Liability was already granted against SMC on a prior summary judgment motion and default entered against it. The damages due to each Plaintiff for these counts is a straightforward mathematical calculation from

the jury's award against the Birks for their FLSA violations from which no fact finder could reach an alternative conclusion.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed their original Complaint on March 26, 2021, and then filed an Amended Complaint on November 8, 2021 (the "Complaint"), alleging willful violations by each Defendant of the FLSA, IMWL, and IWPCA. On November 30, 2022, Plaintiffs filed a Motion for Summary Judgment ("MSJ") in this case following discovery. *See* ECF No. 153. For brevity, Plaintiffs hereby incorporate by reference and refer this Court to the Rule 56.1(C)(2) Statement of Undisputed Material Facts ("SOF"), ¶¶1-62, filed in conjunction with Plaintiffs Motion for Summary Judgment. *See* ECF No. 153-1. The matter was fully briefed, including Defendants' submission of an Opposition on January 6, 2023. *See* ECF No. 169. Plaintiffs argued throughout the MSJ that the standard for individual liability for violations of the IMWL and IWPCA were the same as that for the FLSA, if not more lenient in favor of the Plaintiff and that summary judgment should be entered in their favor on all counts against each defendant. *See* ECF No. 153-1.

On September 29, 2024, the Court issued its Order granting in part the Motion for Summary Judgment. *See* ECF No. 239 at 36. The Court determined that the Plaintiffs were misclassified as exempt outside sales employees and that Defendants SMC and Brian Birk, Vice President of Smart, were liable for wages wrongfully withheld from the Plaintiffs in violation of the FLSA. *Id.* at 36-37. The Court also determined that Defendant SMC was liable to Plaintiffs for backpay for certain improper deductions made from Plaintiffs' pay, in violation of the IWPCA. *Id.* at 37. The Court determined that Richard Birk's individual liability was a jury question as was the issue of willfulness for the IMWL violations for the Birks. *Id.* The Court did not fully consider and therefore did not conclusively reach a decision as to the individual liability for Richard Birk,

President and owner of SMC, or Brian Birk as to the IMWL and IWPCA violations. *See id.*

On January 22, 2025, Defendants' counsel filed a motion to withdraw. *See* ECF No. 263. On January 30, 2025, the Court held a conference with defense counsel and the Birks, which included an *ex parte* session to review certain justifications for the withdrawal. *See* ECF No. 269. Defense counsel was granted leave to withdraw and "Defendants [were] warned that a corporate entity, like Smart Mortgage, Inc. must be represented in court by a licensed lawyer." *Id.* On March 14, 2025, the Court held a scheduling conference, for which SMC did not have counsel present. *See* ECF No. 275. Defendant Brian Birk was advised by the Court that while he was entitled to represent himself, the corporation could not do so, and one last extension of the scheduling conference would be granted for SMC to obtain counsel or else they would be held in default. *Id.* At a follow-up conference on March 28, 2025, SMC still did not have counsel. *See* ECF No. 279. As such, the Court entered Default, but noted "the default cannot yet be reduced to a default judgment until after entry of judgment as to the individual Defendants." *Id.*

Plaintiffs hereby incorporate by reference and refer this Court to the Rule 56.1(C)(2) Statement of Undisputed Material Facts ("SOF"), ¶¶1-37, filed in conjunction herewith. From May 19–21, 2025, a jury trial took place to address the issues of individual liability under FLSA for Richard Birk, the willfulness of the violations for Richard Birk and Brian Birk, and the amount of damages under FLSA due to each Plaintiff. The jury returned a verdict on May 21, 2025, confirming willful liability against the Birks and awarding Plaintiffs the full amount of minimum wages and overtime sought by each for the violations, along with liquidated damages.

## **STANDARD OF REVIEW**

### I. **Summary Judgment**

Summary judgment is proper where "the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted). When the movant has met its burden, the opposing party must "point to evidence that can be put in admissible form at trial, and that, if believed by the fact-finder, could support judgment in his favor." *Marr v. Bank of America, N.A.*, 662 F.3d 963, 966 (7th Cir. 2011)). The non-moving party must affirmatively demonstrate with "*specific facts*" that a genuine issue exists that requires trial. *Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003) (emphasis in original)).

## II. Default Judgment

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). The party must then apply to the court for a default judgment, for which the Court may require a hearing to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

## ARGUMENT

### I. The Individual Liability Standard is the Same Under FLSA and Illinois Wage Law Claims.

Minimum wage and overtime claims brought under the FLSA and IMWL are evaluated

using the same analysis. *Curry v. Kraft Foods Glob., Inc.*, No. 10 C 1288, 2012 U.S. Dist. LEXIS 3720 (N.D. Ill. Jan. 12, 2012) (collecting cases); *Driver v. AppleIllinois, LLC*, 890 F. Supp. 2d 1008, 1010 (N.D. Ill. 2012) ("IMWL parallels the FLSA and the same analysis has generally been applied to both statutes.") (citing *Condo v. Sysco Corp.*, 1 F.3d 599, (7th Cir. 1993)); *see also* ECF No. 153-1 at 3; *Labriola* v. *Clinton Entm't. Mgmt., LLC*, No. 15 C 4123, 2016 WL 1106862, at *5 (N.D.Ill. Mar. 22, 2016) (collecting cases). Further, the Illinois Administrative Code provides that the Director of the Illinois Department of Labor, in interpreting the IMWL and regulations thereunder, may look to the United States Department of Labor's regulations and interpretations of the FLSA. Ill. Admin. Code tit. 56, pt. 210.120 (2022); *see also* ECF No. 153-1 at 4. The Code also provides that where there are concurrent state and federal powers, the stricter of the two shall prevail. Ill. Admin. Code tit. 56, pt. 210.100 (2022); *see also* ECF No. 153-1 at 4. "Thus, if there is a difference in the interpretation of the IMWL and FLSA, the IMWL is more favorable to the employee." *AppleIllinois, LLC*, 890 F. Supp. 2d at 1011; *see also* ECF. No. 153-1 at 4.

To succeed on a FLSA overtime claim, a plaintiff must establish the following, which would also enable them to prevail on an IMWL claim: 1) the plaintiff was employed by the defendant; 2) the defendant is engaged in interstate commerce or the plaintiff is otherwise covered by the FLSA; 3) the plaintiff worked in excess of 40-hours in a workweek; and 4) the defendant did not pay the plaintiff overtime wages. *Wiseman v. Tastefully Better*, No. 19-cv-1441, 2021 WL 5321075, at *2 (N.D. Ill. Nov. 16, 2021). "The same standards apply to the overtime claim under the Illinois Minimum Wage Law." ECF No. 239 at 16 (comparing IMWL analysis with FLSA, *citing AppleIllinois, LLC*). FLSA's economics realities test also applies to analysis of individual liability of IMWL. *Cho v. Maru Rest., Inc.*, 194 F. Supp. 3d 700, 705 (N.D. Ill. 2016).

The FLSA and IMWL both require employees to show they were 1) covered under the

statute and 2) were not paid a minimum wage for each hour of work. *Callahan v. City of Chi.*, 78 F. Supp. 3d 791, 793 (N.D. Ill. 2015); *see also*, ECF No. 153-1 at 4; *Berger v. Perry's Steakhouse of Ill., LLC*, 430 F. Supp. 3d 397, 404 (N.D. Ill. 2019) (citing 29 U.S.C. § 206 and 820 ILCS 105/4(a)(1)); ECF No. 153-1 at 4, 6. With respect to the state laws, Plaintiffs were protected under the IMWL during their employment with SMC, as it is applies to a "corporation. . . or any person acting directly or indirectly in the interest of an employer in relation to an employee, for which one or more persons are gainfully employed on some day within a calendar year," and employing more than four employees. 820 I.L.C.S. § 105/3; *see also* ECF No. 153-1 at 6. "Illinois courts look to the FLSA to interpret the IMWL." *Cho*, 194 F. Supp. 3d. at 705.

Similarly, under the IWPCA, an employer is defined as "any individual or entity that employs one or more people, including certain employment and labor placement agencies and any person acting directly or indirectly in the interest of an employer in relation to an employee." 820 Ill. Comp. Stat. 115/2; *see also* ECF No. 153-1 at 6. "We endorse the approach taken by the United States Court of Appeals for the First Circuit … In *Agnew,* the court was asked to construe section 203(d) of the Fair Labor Standards Act (FLSA) (29 U.S.C. § 203(d) (1988)), which defines "employer" in terms very similar to the Wage Act." *Andrews v. Kowa Printing Corp.*, 217 Ill. 2d 101, 108 (2005). The *Andrews* court further declined to impose the economics realities test of FLSA because IWPCA's individual liability standard is defined less stringently:

> Liability under the Wage Act can be imposed upon employers, as that term is traditionally understood, and upon any officers of a corporation or agents of an employer who knowingly permitted the Wage Act violation defined to include both any employers and those officers or agents of a company who knowingly permitted the wage violation.

*Andrews*, 217 Ill. 2d at 112 (stressing individual's control of terms and conditions of employment). However, "both the FLSA and IWPCA explicitly extend liability to individual employers."

*Dawkins v. NR 1 Transp., Inc.*, No. 20 C 4063, 2021 WL 4125086, at *6 (N.D. Ill. Sept. 8, 2021).

"The standard for supervisor liability in the IWPCA context is less stringent than in the FLSA." *Bum Hoon Lee v. BK Schaumburg Inc.*, No. 18-CV-3593, 2020 WL 3577994, at *4 (N.D. Ill. July 1, 2020) (relying on *Andrews*). "In addition to the [FLSA] test discussed above, known as the economic realities test, the IWPCA also imposes liability on individuals who knowingly permit a wage violation." *Natal v. Medistar, Inc.*, 221 F. Supp. 3d 999, 1004 (N.D. Ill. 2016).

The IMWL and IWPCA apply to all three Defendants because SMC, through the Birks, employed Ryan Klaic from 2011 to 2021, meaning that for the entire statute of limitations period, SMC employed at least one person. SOF at ¶13. Moreover, from March 26, 2018, to May 2, 2022, SMC, through the Birks, employed 26 loan officers, SOF at ¶15, and as of May 5, 2022, SMC, through the Birks, employed 18 loan officers. SOF at ¶16. Plaintiffs demonstrated in summary judgment that Brian Birk exercised sufficient authority to be considered acting directly or indirectly on behalf of SMC in relation to the employee, overseeing the day-to-day performance of their jobs and controlling payroll. *See* ECF No. 239 at 30-31. The jury similarly confirmed that Richard Birk was individually liable because he negotiated all of the Plaintiffs' contracts, the terms of their employment, determined their compensation, and maintained authority for hiring, firing, or disciplining them. The jury ruled that both willfully violated the FLSA, a far higher standard than Illinois' laws. Accordingly, the Birks are individually liable under the IMWL and IWPCA.

II. **Defendants Waived any Argument that Individual Liability for the Illinois Claims Use a Separate Standard from FLSA.**

"Failure to set forth any evidence or to develop any arguments in opposition to the moving party's summary judgment motion results in waiver of the nonmoving party's arguments and an abandonment of his claims." *De v. City of Chicago*, 912 F. Supp. 2d 709, 734 (N.D. Ill. 2012) (*See Palmer v. Marion Cnty.,* 327 F.3d 588, 597–98 (7th Cir.2003); *Union v. Caruso,* 197 F.3d 1195,

1197 (7th Cir.2003) (stating that arguments not presented to the district court in response to a summary judgment motion are waived)). Reviewing Plaintiffs' MSJ, they moved for judgment regarding each count of the complaint and against each of the defendants, stressing the Birks' individual liability. *See* ECF Nos. 153; 153-1; 192. This was undoubtedly understood by Defendants as they repeatedly advocated that the Court deny the MSJ with respect to all counts. *See* ECF No. 169 at 1, 13. Further, Defendants' Opposition was replete with references to the Illinois wage laws. *See* ECF No. 169. Courts have similarly used such waiver standards in the context of individual liability under wage laws to rule on summary judgment. *See Cardenas v. Grozdic*, 67 F. Supp. 3d 917, 922 (N.D. Ill. 2014) (granting summary judgment on FLSA and IWPCA claims based on waiver); *Wojtas v. Capital Guardian Trust Co.,* 477 F.3d 924, 926 (7th Cir.2007) (failure to offer opposition to argument constitutes waiver); *Cincinnati Ins. Co. v. E. Atl. Ins. Co.,* 260 F.3d 742, 747 (7th Cir.2001) (failure to oppose argument permits inference of acquiescence and "acquiescence operates as a waiver").

As identified in Plaintiffs' reply brief in their prior MSJ, Defendants did not dispute in their opposition that the IMWL or IWPCA use the same standard for determining individual liability as the FLSA, or that they are covered by the IWPCA, or that the ten-year statute of limitations for the IWPCA applies. *See* ECF No. 192 at 8. Plaintiffs stressed that "Defendants concede two key points regarding Plaintiffs' FLSA and IMWL claims for minimum wage and overtime, including that 1) minimum wage and overtime claims brought under the FLSA and IMWL are evaluated using the same analysis and 2) Plaintiffs were covered by the FLSA, IMWL, and IWPCA." *Id.* at 2. Defendants never challenged conceding these points because they acknowledged it as the governing law. Throughout the case, Defendants agreed FLSA, IMWL, or IWPCA, were all applicable and utilized equivalent standards for individual liability – they simply maintained in

8

pretrial filings and at trial that Plaintiffs were exempt employees from the laws' protections because of the contractual provisions attempting to designate them as outside salespeople and authorizing deductions, both of which the Court deemed inapplicable. *See* ECF No. 153-1 at 9; ECF No. 169 at 7, 8, 11. Defendants argued in their Opposition to MSJ simply that "all of the Plaintiffs' signed Outside Sales Employee Riders to Smart Mortgage Centers, Inc. Loan Officer Retention Agreements in which they agreed that they would be treated as exempt from the minimum wage and overtime pay requirements of the FLSA and Illinois minimum wage and overtime law" and they repeated this point when specifically addressing the question of individual liability. ECF No. 169 at 8, 11. Both parties relied on *Schneider v. Cornerstone Pints, Inc.*, to set forth the standard for individual liability. 148 F.Supp.3d 690, 696-698 (N.D. Ill. 2015); ECF Nos. 153-1 at 12; 169 at 10-11; 192 at 6. The Birks only disputed factor four of *Schneider*, that they did not exercise their authority, at least enough to have caused the violations in whole or in part, not whether this was an accurate standard. *See* ECF Nos. 169 at 11; 192 at 6-7. Similarly, Plaintiffs emphasized in their Reply that Defendants do not dispute that the Plaintiffs are covered by the IWPCA or that the ten-year statute of limitations applies. *See* ECF No. 192 at 8.

For these reasons, Defendants are prohibited from raising new arguments that any distinct standard for individual liability under either IMWL or IWPCA from that of the FLSA should apply.

III. **Res Judicata Renders a Subsequent Trial To Confirm Individual Liability for Richard and Brian Birk on the IMWL and IWPCA Unnecessary and Would Risk Inconsistent Verdicts.**

"Generally, issue preclusion applies to prevent parties from relitigating an issue." *Berger*, 430 F. Supp. 3d at 407–08 ("The Court thus grants Plaintiffs summary judgment" on their wage claims). Issue preclusion applies where: "(1) the issue sought to be precluded is the same as an issue in the prior litigation; (2) the issue must have been actually litigated in the prior litigation;

(3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must have been fully represented in the prior action." *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014).

"The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action." *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334 (1996). *Res judicata* bars not only what was actually decided in the first action but also whatever could have been decided. *La Salle National Bank v. County Board of School Trustees,* 61 Ill. 2d 524, 529 (1975); *Torcasso v. Standard Outdoor Sales, Inc.,* 157 Ill. 2d 484, 490 (1993). "Three requirements must be satisfied for *res judicata* to apply: (1) a final judgment on the merits has been rendered by a court of competent jurisdiction; (2) an identity of cause of action exists; and (3) the parties or their privies are identical in both actions. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008). *Downing v. Chicago Transit Authority,* 162 Ill. 2d 70, 73–74 (1994). "Two claims are one for purposes of res judicata if they are based on the same, or nearly the same, factual allegations." *Herrmann v. Cencom Cable Assoc.,* 999 F.2d 223, 226 (7th Cir.1993).

Here, the issues of individual liability for the Birks under IMWL and IWPCA meet all the elements of issue preclusion. The elements of their individual liability was the "central subject" of the trial from May 19-21, 2025, was actually litigated, and was essential to the final judgment in that case, and the Birks were fully represented in the first trial, albeit choosing to represent themselves pro se. *See Berger*, 430 F. Supp. 3d at 407–08 (N.D. Ill. 2019) (*citing TRW, Inc. v. Ellipse Corp.*, 495 F. 2d 314, 318 (7th Cir. 1974); *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294 (1917)). There is no factual dispute following the jury's verdict about the level of authority exercised by the Birks over the Plaintiffs and their role in causing the wage violations under either

10

the FLSA, IMWL, or IWPCA. *See Guzman v. Laredo Sys., Inc.*, No. 10 CV 1499, 2012 WL 5197792, at *1 (N.D. Ill. Oct. 19, 2012) (declining to further analyze issue of personal liability as to FLSA and IMWL claims where it had already been established that individual defendant "was president and in charge of" the defendant company).

Requiring a subsequent trial to assess the issue of individual liability which has already been settled by the jury's verdict on May 21, 2025, would unnecessarily create a risk for impermissibly inconsistent verdicts. "Citing earlier decisions of the appellate court, this court stated that '[i]n the same action, where verdicts are returned which are legally inconsistent with each other, the verdicts should be set aside and a new trial granted.'" *Redmond v. Socha*, 216 Ill. 2d 622, 641 (2005) (*quoting Wottowa Insurance Agency, Inc. v. Bock,* 104 Ill.2d 311, 316 (1984)).

Here, an additional trial on these issues is redundant unless a subsequent "jury's verdict [on individual liability] was irreconcilably inconsistent, because resolving the inconsistency would have required either imposing liability on a defendant the jury had absolved or freeing a defendant from liability in the face of the jury's finding to the contrary—and as we said, 'there is no priority among inconsistent verdicts.'" *Cont'l Vineyard, LLC v. Vinifera Wine Co., LLC*, 973 F.3d 747, 753–54 (7th Cir. 2020) (*quoting Gordon v. Degelmann*, 29 F.3d 295, 298-99 (7th Cir. 1994). For these additional reasons, the Court should grant this Motion confirming individual liability against the Birks under both the IMWL and IWPCA, requiring only a straightforward tabulation of damages based on the jury's verdict for the FLSA claims to render final judgment for the Plaintiffs.

## IV. Amount of Damages Owed by Defendants.

### A. Standard for Computing Damages

When an employee is subject to both federal and state minimum wage laws, that employee is entitled to the highest of the minimum wages. 29 U.S.C. § 218(a); see also Zavala-Alvarez v.

Darbar Mgmt., Inc., 617 F. Supp. 3d 870, 883 (N.D. Ill. 2022). "Courts apply the same principles in determining overtime compensation due under both the IMWL and FLSA." *Barwick v. Heart & Home in Home Care, LLC*, No. 4:23-CV-04225-SLD, 2025 WL 714348, at \*3 (C.D. Ill. Mar. 5, 2025) (*citing Urnikis-Negro v. Am. Fam. Prop. Servs.*, 616 F.3d 665, 672 n.3 (7th Cir. 2010). "For purposes of the overtime calculation, an employee's regular rate of pay is the amount of compensation he receives per hour." *Urnikis-Negro*, 616 F.3d at 673 (citing 29 C.F.R. § 778.109). "If the employee's regular rate of pay is higher than the statutory minimum, his overtime compensation must be computed at a rate not less than one and one-half times such higher rate." 29 C.F.R. § 778.107.

In addition to liquidated damages awarded by the jury pursuant to the FLSA violations, Plaintiffs are also entitled to treble damages under the IMWL for the amount of minimum wages and overtime wages withheld.[1] Under Illinois law, these remedies are not mutually exclusive. *Cain v. Patel*, No. 19-cv-1385-RJD, 2021 U.S. Dist. LEXIS 237257 (S.D. Ill. Dec. 6, 2021). Plaintiffs are also entitled to an underpayment penalty under the IMWL. 820 ILCS §105/12.

Further, "the Defendants violated the IWPCA by taking improper deductions for any instances in which the Plaintiffs did not sign any commission sheet that reflected the deductions." *See* Court's Order on MSJ, ECF No. 239 at 3, 37. A review of the records in this case revealed that Plaintiffs did not sign a commission sheet for a single loan closed by these Plaintiffs to authorize any corresponding deductions. *See* Ryan Klaic Loan Journals 2018 – 2021 attached as Exhibit A (Plaintiff's Trial Exhibits 8-11); Klaic Commission Sheets attached as Exhibit B (Plaintiff's Trial

---

[1] "If any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this Act, the employee may recover in a civil action treble the amount of any such underpayments together with costs and such reasonable attorney's fees as may be allowed by the Court, and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid." 820 ILCS §105/12 (IMWL)(a).

Exhibit 12); Platt 2018 Loan Journal attached as Exhibit C (Plaintiff's Trial Exhibit 13); Platt Commission Sheets attached as Exhibit D (Plaintiff's Trial Exhibit 16); Pruitt Commission Sheets attached as Exhibit E (Plaintiff's Trial Exhibit 15); Jno-Lewis Commission Sheet attached as Exhibit F (Plaintiff's Trial Exhibit 17). Therefore, there is no factual dispute on the figures to present to a jury. This additional criterion of damages applies to Plaintiffs Ryan Klaic, Alan Platt, and Shian Jno-Lewis, while Ms. Pruitt and Ms. Holland did not have examples of any deductions taken by Defendants. Plaintiffs Ryan Klaic, Alan Platt, and Shian Jno-Lewis are further entitled to the underpayment penalty provided for by the IWPCA. *See* 820 ILCS § 115/14.[2]

### B. Eileen Pruitt's Damages

The jury awarded Ms. Pruitt the full amount she sought under FLSA for $8,482.50 for withheld minimum wages and $2,249.85 for withheld overtime wages based on her work for Defendants from May 6, 2019 – February 20, 2020. Adjusting this figure from the federal minimum wage of $7.25 per hour to the Illinois minimum wages applicable for that period ($8.25 in 2019 and $9.25 for those months in 2020) yields $9,877.50 in withheld minimum wages and $2,337.35 in withheld overtime. *Compare* Plaintiff's Trial Exhibit 32 *with* Plaintiff's Exhibit G. This results in total underlying damages under IMWL of $12,214.85. Ms. Pruitt is then entitled to treble damages under the IMWL of an additional $36,644.55. She is further entitled to five percent of the withheld amount ($610.74) for each month from the time at which it was withheld. That extends at least from the time of her resignation on February 20, 2022, if not back further to each individual week of underpayment during the course of her employment, through the time of award, which will be sometime following the close of the briefing schedule on August 11, 2025,

---

[2] "Any employee not timely paid wages, final compensation, or wage supplements by his or her employer as required by this Act shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid." 820 ILCS § 115/14(a).

constituting 66 months. That equals an additional $40,308.84. These amounts are in addition to the jury's award of $7,000 liquidated damages for Ms. Pruitt under FLSA, which would raise here overall award from the jury's verdict of $17,732.35 to the amount of compensation she is entitled to for Defendants' violations: $96,168.24.

    C. <u>Ryan Klaic's Damages</u>

The jury awarded Mr. Klaic the full amount he sought under FLSA for $22,233.96 for withheld minimum wages and $113,115.90 for withheld overtime wages based on his work for Defendants from June 1, 2011 – August 6, 2021. Adjusting this figure from the federal minimum wage of $7.25 per hour to the Illinois minimum wages applicable for that period ($8.25 in 2018 and 2019, $9.25 for the first six months in 2020, $10 for the remainder of 2020, then $11 in 2021) yields $25,757.93 in withheld minimum wages and $113,925.00 in withheld overtime. *Compare* Plaintiff's Trial Exhibit 33 *with* Plaintiff's Exhibit H. This results in total underlying damages under IMWL of $139,682.93. Mr. Klaic is then entitled to treble damages under the IMWL of an additional $419,048.79. He is further entitled to five percent of the withheld amount ($6,984.14) for each month from the time at which it was withheld. That extends at least from the time of his resignation on August 6, 2021, if not back further to each individual week of underpayment during the course of his employment, through the time of award, which will be sometime following the close of the briefing schedule on August 11, 2025, constituting 48 months. That equals an additional $335,238.72. These amounts are in addition to the jury's award of $75,000 liquidated damages for Mr. Klaic under FLSA.

Mr. Klaic is also entitled to the amount of improper deductions levied upon his wages by Defendants during the course of his employment on all commissions for which they did not receive a signed commission sheet. *See* ECF No. 239 at 3, 37. For Klaic, deductions span several years

due to the IWPCA's ten-year statute of limitations. *See* 735 ILCS 5/13-206. However, Defendants only produced payroll records dating back to 2018 in discovery. *See* Plaintiff's Trial Exhibits 8-11; Defendant's Trial Exhibit 39. This was contrary to the Court's Order requiring production of such material from 2011 through the present, with the justification that SMC was no longer in possession of such material for Mr. Klaic from prior to 2018. *See* ECF Nos. 160; 169; 187; 188. Therefore, the amount of improper deductions by Defendants in the remaining years is established by using the yearly average of deductions withheld by Defendants for the three years for which Defendants produced data and applying that calculation to the remaining seven years. Based on the records confirming that Defendants did not obtain a signed commission sheet from Plaintiffs for a single loan closing, there is no factual dispute that they obtained a signed commission sheet for any deductions during this prior seven-year period. *See* Exhibit B; Exhibit D; Exhibit E; Exhibit F. Further, given it is the employer's obligation to retain these records, and they either unwittingly failed to retain it or committed spoliation, such an approximation of the actual damages is appropriate. *See* ECF No. 315, Jury Instructions at 17; *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687-88 (1946); *Baker v. Barnard Constr. Co.,* 146 F.3d 1214, 1220 (10th Cir. 1998).

From 2018 through 2021, Defendants improperly deducted $21,850.58 from the wages they paid him. *See* Exhibit H; Exhibit A; Exhibit B. That establishes an annual average of $5,462.64, which is a conservative figure given only seven months of 2021 were incorporated but counted as a full year. That totals $35,507.19 for the remaining six and a half years from June 1, 2011, through 2017. Therefore, Mr. Klaic is entitled to $57,357.77 in underlying IWPCA damages. He is further entitled to five percent of the withheld amount ($2,867.89) for each month from the time at which it was withheld. That extends at least from the time of his resignation on August 6, 2021, if not back further to each individual week of improper deductions during the course of his

employment, through the time of award, which will be sometime following the close of the briefing schedule on August 11, 2025, constituting 48 months. That equals an additional $137,658.72.

In total, Mr. Klaic's damages increase through the incorporation of the amounts impermissibly withheld under the IMWL, along with the corresponding statutory penalties, from the jury's verdict of $210,349.86 to the amount of compensation he is entitled to for Defendants' FLSA and IMWL violations: $968,970.44. He is further entitled to the IWCPA improper deductions and penalties totaling $195,016.49, for a final judgment amount of $1,163,986.93.

D. Alan Platt's Damages

The jury awarded Mr. Platt the full amount he sought under FLSA for $3,262.50 for withheld minimum wages and $7,912.80 for withheld overtime wages based on his work for Defendants from April 5, 2018 – January 1, 2019. Adjusting this figure from the federal minimum wage of $7.25 per hour to the Illinois minimum wages applicable for that period ($8.25) yields $3,712.50 in withheld minimum wages and $7,957.80 in withheld overtime. *Compare* Plaintiff's Trial Exhibit 34 *with* Plaintiff's Exhibit I. This results in total underlying damages under IMWL of $11,670.30. Mr. Platt is then entitled to treble damages under the IMWL of an additional $35,010.90. He is further entitled to five percent of the withheld amount ($583.51) for each month from the time at which it was withheld. That extends at least from the time of his resignation on January 1, 2019, if not back further to each individual week of underpayment during the course of his employment, through the time of award, which will be sometime following the close of the briefing schedule on August 11, 2025, constituting 80 months. That equals an additional $46,680.80. These amounts are in addition to the jury's award of $8,000 liquidated damages for Mr. Platt under FLSA.

Mr. Platt is also entitled to the amount of improper deductions levied upon his wages by

Defendants during the course of his employment on all commissions for which they did not receive a signed commission sheet. *See* ECF No. 239 at 3, 37. Defendants improperly applied deductions to his wages on two occasions, neither of which feature correspondingly signed commission sheets as Defendants did not obtain a signed commission sheet on any occasion from him. *See* Exhibit I; Exhibit C; Exhibit D. This totaled $154.06 in underlying damages under the IWPCA. He is further entitled to five percent of the withheld amount ($7.70) for each month from the time at which it was withheld. That extends at least from the time of his resignation on January 1, 2019, if not back further to each individual week of underpayment during the course of his employment, through the time of award, which will be sometime following the close of the briefing schedule on August 11, 2025, constituting 80 months. That equals an additional $616.00.

In total, Mr. Platt's damages increase through the incorporation of the amounts impermissibly withheld under the IMWL, along with the corresponding statutory penalties, from the jury's verdict of $19,175.30 to the amount of compensation he is entitled to for Defendants' FLSA and IMWL violations: $101,362.00. He is further entitled to the IWCPA improper deductions and penalties totaling $770.06, for a final judgment amount of $102,132.06.

E. Stephanie Holland's (Picardo's) Damages

The jury awarded Ms. Holland the full amount she sought under FLSA for $8,845.00 for withheld minimum wages based on her work for Defendants from October 19, 2015 – December 31, 2018. Adjusting this figure from the federal minimum wage of $7.25 per hour to the Illinois minimum wages applicable for that period ($8.25 in 2018) yields $10,065.00 in withheld minimum wages. *Compare* Plaintiff's Trial Exhibit 35 *with* Plaintiff's Exhibit J. Ms. Holland is then entitled to treble damages under the IMWL of an additional $30,195.00. She is further entitled to five percent of the withheld amount ($503.25) for each month from the time at which it was withheld.

17

That extends at least from the time of her resignation on December 31, 2018, if not back from each individual week of underpayment during the course of her employment, through the time of award, which will be sometime following the close of the briefing schedule on August 11, 2025, constituting 80 months. That equals an additional $40,260.00. These amounts are in addition to the jury's award of $4,000 liquidated damages for Ms. Holland under FLSA, which would raise here overall award from the jury's verdict of $12,845.00 to the amount of compensation she is entitled to for Defendants' violations: $84,520.00.

F.  Shian Jno-Lewis's Damages

The jury awarded Ms. Jno-Lewis the full amount she sought under FLSA for $15,660.00 for withheld minimum wages based on her work for Defendants from July 27, 2016 – December 31, 2018. Adjusting this figure from the federal minimum wage of $7.25 per hour to the Illinois minimum wages applicable for that period ($8.25 in 2018) yields $17,820.00 in withheld minimum wages. *Compare* Plaintiff's Trial Exhibit 36 *with* Plaintiff's Exhibit K. Ms. Jno-Lewis is then entitled to treble damages under the IMWL of an additional $53,460.00. She is further entitled to five percent of the withheld amount ($891.00) for each month from the time at which it was withheld. That extends at least from the time of her resignation on December 31, 2018, if not back further to each individual week of underpayment during the course of her employment, through the time of award, which will be sometime following the close of the briefing schedule on August 11, 2025, constituting 80 months. That equals an additional $71,280.00. These amounts are in addition to the jury's award of $6,000 liquidated damages for Ms. Jno-Lewis under FLSA.

Ms. Jno-Lewis is also entitled to the amount of improper deductions levied upon her wages by Defendants during the course of her employment on all commissions for which they did not receive a signed commission sheet. *See* ECF No. 239 at 3, 37. Defendants improperly applied

18

deductions to her wages on one occasion, through the application of a $20.73 credit report free and $255 license renewal fee, which did not feature a correspondingly signed commission sheet. *See* Exhibit F. This totaled $275.73 in underlying damages under the IWPCA. She is further entitled to five percent of the withheld amount ($12.89) for each month from the time at which it was withheld. That extends at least from the time of her resignation on December 31, 2018, if not back further to each individual week of underpayment during the course of her employment, through the time of award, which will be sometime following the close of the briefing schedule on August 11, 2025, constituting 80 months. That equals an additional $1,031.20.

In total, Ms. Jno-Lewis's damages increase through the incorporation of the amounts impermissibly withheld under the IMWL, along with the corresponding statutory penalties, from the jury's verdict of $21,660.00 to the amount of compensation she is entitled to for Defendants' FLSA and IMWL violations: $148,560. She is further entitled to the IWCPA improper deductions and penalties totaling $1,306.93, for a final judgment amount of $149,866.93.

## V. Default Judgment Should Be Entered Against SMC.

Default was entered against SMC on March 28, 2025, for its failure to retain an attorney and defend itself in this case. *See* ECF No. 279. The Court determined that default judgment would then be appropriate following a trial addressing the minimum wages and overtime improperly withheld from the Plaintiffs. In order to enter default judgment after entering default, "a hearing on damages should be held 'unless ... the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits.'" *Barwick v. Heart & Home in Home Care, LLC*, No. 4:23-CV-04225-SLD, 2025 WL 714348, at *2 (C.D. Ill. Mar. 5, 2025) (*quoting Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F. 2d 1319, 1323 (7th Cir. 1983)). Here, a trial was held determining the amount of damages for the

19

FLSA violations which included the jury's findings for the weeks on which each Plaintiff was entitled to minimum wages and overtime wages that were improperly withheld by Defendants. As such, the amount of default judgment now to be entered against SMC "is for a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(1). SMC was given the requisite notice of this trial and that a default judgment would be returned based on the amount awarded against the individual defendants. *See* ECF No. 279. They were even provided with extensions prior to the scheduling of the trial and the ability to potentially have the trial date continued if counsel was obtained. Following the results of this trial and the facts presented above regarding the calculation of damages, there are no issues left to be decided. The case is ripe for the entry of default judgment in favor of these specific plaintiffs, as conceived of by the Court when noting that default judgment could be entered following trial. *See* ECF No. 279.

### CONCLUSION

WHEREFORE, for the reasons set forth above, Plaintiffs respectfully request that the Court grant this Motion, find individual liability against Defendant Richard Birk and Defendant Brian Birk for violating the Illinois Minimum Wage Law, the Illinois Wage Payment and Collections Act, and enter Default Judgment against Defendant Smart Mortgage Centers, Inc. The Court should find Defendants jointly and severally liable in the amounts of $96,168.24 to Plaintiff Eileen Pruitt, $1,163,986.93 to Plaintiff Ryan Klaic, $102,132.06 to Plaintiff Alan Platt, $84,520.00 to Plaintiff Stephanie Holland (Picardo), and $149,866.93 to Plaintiff Shian Jno-Lewis. Plaintiffs continue to reserve the right to seek attorneys' fees and costs of this suit as provided for by statute pursuant to a briefing schedule to be set by the Court at a later date.

Dated: June 30, 2025

Respectfully submitted,

By: */s/ Alexander Rogosa*
Alexander Rogosa (*Admitted Pro Hac Vice*)
Ari Karen, Esq. (*Admitted Pro Hac Vice)*
Mitchell Sandler LLC
1120 20th Street, NW, Suite 725
Washington D.C. 20036
Tel: (202) 794-5258
Email: arogosa@mitchellsandler.com
Email: akaren@mitchellsandler.com

Daniel R. Sarther
Christensen Hsu Sipes, LLP
224 South Michigan Avenue, Suite 1300
Chicago, IL 60604
Tel: (312) 634-1014
Email: dan@chs.law

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Alexander Rogosa, an attorney, certify that I caused a true and accurate copy of Plaintiffs'

Motion for Summary Judgment and Default Judgment, along with its exhibits, to be filed

electronically using the Electronic Filing System of the United States District Court for the

Northern District of Illinois, on June 30, 2025. Notice and a copy of this filing will be sent via the

Court's Electronic Filing System to all parties and counsel of record.

*/s/ Alexander Rogosa*
Alexander Rogosa (*Admitted Pro Hac Vice*)