**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Brian Noe, Eileen Pruitt, Stephanie Pichardo, Shian Jno-Lewis, Alan Platt, Ryan Klaic, Michelle McCue, and Jose Morales, | |
| Plaintiffs, | No. 1:21-CV-01668 |
| v. | Judge Edmond E. Chang |
| Smart Mortgage Centers, Inc., Richard Birk, and Brian Birk, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Brian Noe and Eileen Pruitt, along with opt-in plaintiffs Stephanie Pichardo (formerly née Holland), Shian Jno-Lewis, Alan Platt, Ryan Klaic, Michelle McCue, and Jose Morales bring this lawsuit for (among other things) unpaid minimum and overtime wages. R. 39, First Am. Compl.[1] The Plaintiffs allege that their former employer—Smart Mortgage Centers, Inc., its president Richard Birk, and its vice-president Brian Birk—violated the Federal Labor Standards Act (familiarly the FLSA), the Illinois Minimum Wage Law, and the Illinois Wage Payment and Collection Act.[2] *Id.* ¶¶ 46–82. At this stage of the litigation, Pruitt, Pichardo, Jno-Lewis, Platt, and Klaic (referred to as the Motion Plaintiffs for convenience's sake) move for summary

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2]This Court has federal question jurisdiction of the federal claim under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

judgment on issues of state law against Richard Birk and Brian Birk and for default judgment against Smart Mortgage. R. 343, Pls.' Mot.

For the following reasons, the Court grants in part and denies in part the motion. As a preview, the Court decides as follows:

- there is a triable issue of fact whether the Birks are individually liable under the Wage Collection Act because the standard for liability differs from the test under the FLSA;

- the Birks are individually liable under the Minimum Wage Law because they were individually liable under the FLSA;

- the Motion Plaintiffs are entitled to damages under state law for unpaid minimum and overtime wages that are calculable based on the jury awards for damages under federal law after the first trial; and

- an entry of default liability against Smart Mortgage for the Motion Plaintiffs' damages is appropriate.

## I. Background

For the purposes of this Opinion, the Court assumes familiarity with the facts as recounted in the resolution of the parties' earlier cross-motions for summary judgment. *See Noe v. Smart Mortg. Ctrs. Inc.*, 2024 WL 4346562 (N.D. Ill. Sep. 29, 2024). To briefly summarize some pertinent facts and allegations, the Plaintiffs sued the Defendants for failing to pay minimum and overtime wages and for taking improper deductions from their earnings. First Am. Compl. ¶¶ 46–82. In the earlier summary-judgment opinion, the Court determined that Noe was not entitled to overtime wages;

2

that the current Motion Plaintiffs were misclassified as outside sales employees, meaning they were entitled to minimum wages under both the FLSA and the Minimum Wage Law; that Brian Birk, but not Richard Birk (at least not for summary judgment purposes), was individually liable for any violations under the FLSA; and that the Defendants violated the Wage Collection Act as to any commission sheets that listed deductions yet were unsigned by the Plaintiffs and thus lacked consent. *Noe*, 2024 WL 4346562, at *1, *14–15.

The parties then prepared for trial. To simplify matters, the Court granted the Plaintiffs' request to bifurcate trial into two separate trials, which meant that the first trial would pertain only to the Motion Plaintiffs for whom summary judgment had already been entered in part. *See* R. 286-1, Pls.' Bifurcation Proposal; R. 285, 04/03/25 Minute Entry. Shortly before trial, however, the Court convened a status hearing to address the fact that the earlier summary-judgment opinion did not expressly evaluate the Defendants' liability under either of the state laws. R. 308, 05/14/25 Minute Entry. At the status hearing the next day, the Court discussed with the parties the possibility that the first trial might cover only the Motion Plaintiffs' claims under the FLSA but not those brought under state law. The Court solicited the Birks' position on whether they would like to continue litigating the state law issues outside of trial. But in doing so, the Court emphasized to the Birks that the Plaintiffs could still assert their state law claims later, even if the parties did not present to the jury the claims at the first trial, because the Plaintiffs alleged in their complaint violations of both state laws and did in fact seek summary judgment on the

3

issue of the Birks' individual liabilities. *See* First Am. Compl. ¶¶ 61–82; R. 153-1, Pls.' Prior Mot. at 3–6, 11–13. And the Court stated that it was entirely possible that, as the Plaintiffs argued, liability under the FLSA and Minimum Wage Law was governed by an identical standard and thus subject to straightforward resolution. The Court also highlighted that damages under state law might be subject to a simple mathematical conversion from any jury award of damages under the FLSA.

The Birks elected to have the Motion Plaintiffs try only the FLSA claims during the first trial. R. 309, 05/15/25 Minute Entry. So the parties presented to the jury three issues relating to the Motion Plaintiffs: Richard Birk's individual liability for any violations under the FLSA; whether the Birks' violations of the FLSA were willful or with reckless disregard for the law; and how much in damages to award under federal law to each of the Motion Plaintiffs. Pls.' Bifurcation Proposal. After a three-day trial, the jury returned a verdict finding Richard Birk individually liable for violations under the FLSA and that Brian Birk and Richard Birk acted willfully or in reckless disregard; the jury also awarded various amounts in minimum and overtime wages as well as liquidated damages (a remedy provided by the FLSA) to each Motion Plaintiff. R. 335, 05/22/25 Minute Entry; R. 336, Jury Verdict.

After trial, the Motion Plaintiffs filed this motion, R. 343, seeking summary judgment on the Birks' individual liabilities under the Minimum Wage Law and Wage Collection Act. Pls.' Mot. at 4–19. They also seek an entry of default judgment against Smart Mortgage. *Id.* at 19–20.

4

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

## III. Analysis

### A. Individual Liability

The Court begins with the Birks' individual liabilities under state law. The Court previously held, on summary judgment, Brian Birk to be individually liable for

any violations of the FLSA, and the jury reached the same conclusion for Richard Birk. The parties dispute whether those conclusions under the FLSA can be used to answer the corresponding question for either or both of the Minimum Wage Law or Wage Collection Act. *See* Pl.'s Mot. at 4–11; R. 360, Defs.' Resp. at 1–4.

A threshold issue is whether the state law claims may be adjudicated at all. The Birks contend that the Plaintiffs forfeited these arguments because they failed to move for summary judgment on them earlier in the litigation. Defs.' Resp. at 1–4. That makes little sense. As detailed earlier, the Plaintiffs did in fact raise the state law claims at each stage of the case, and although the Birks argue now that the issues should be disregarded, the Birks were informed that this exact scenario—a post-trial motion for summary judgment on the state law claims—was on the table, if the Birks chose (as they did) to postpone trial on them. *See Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he filing of successive summary judgment motions is a matter within the discretion of the district court.").

The next question is whether the standard for individual liability under both of the state laws mirrors that of the FLSA. The Motion Plaintiffs contend so, Pls.' Mot. at 4–7, and the Birks do not argue otherwise, *see generally* Defs.' Resp. The Court agrees in part: the FLSA and the Minimum Wage Law share the same standard for liability, but the standard under the Wage Collection Act differs.

Starting with the Wage Collection Act, the Motion Plaintiffs argue that the standard for individual liability under the Wage Collection Act is less stringent than under the FLSA such that liability under the latter requires a conclusion of liability

6

under the former. Pls.' Mot. at 6–7. But courts in this district have not reached a uniform conclusion about the relationship between the two laws on the issue of liability. *Compare Lee v. BK Schaumburg Inc.*, 2020 WL 3577994, at *4 (N.D. Ill. July 1, 2020) ("[T]he standard for supervisor liability in the IWPCA context is less stringent than in the FLSA …."), *with De La Riva v. Houlihan Smith & Co., Inc.*, 848 F. Supp. 2d 887, 892 (N.D. Ill. 2012) ("[T]he 'economic reality' test [under the FLSA] is more easily satisfied than the 'knowingly permit' test [under the Wage Collection Act].". Indeed, the Illinois Supreme Court is clear only that the tests are *different*, but the state high court has not declared that one test is more or less stringent than the other. *See Andrews v. Kowa Printing Corp.*, 838 N.E.2d 894, 900–01 (Ill. 2005) (rejecting "economic realities" test for the FLSA in favor of "knowingly permit" test for the Wage Collection Act). So it does not follow from the Birks' individual liabilities under the FLSA that they are also liable under the Wage Collection Act for any improper deductions.[3]

The overlap between the FLSA and the Minimum Wage Law, however, is more readily determined. Illinois and federal courts have agreed that the standards governing each law are the same. *See, e.g., Haynes v. Tru-Green Corp.*, 507 N.E.2d 945, 951 (Ill. App. Ct. 1987) ("The Illinois law parallels the Federal law."); *Condo v. Sysco*

---

[3]The Court adds that the Plaintiffs generally do not make a claim for improper deductions under the FLSA, *see* First Am. Compl. ¶¶ 46–56, and the first trial concerned only claims under the FLSA for overtime and minimum wages as well as liquidated damages, *see* Jury Verdict at 2–3. So at the first trial, the Motion Plaintiffs never presented evidence on, and the jury never considered, the Birks' individual liability or intent in making improper deductions.

*Corp.*, 1 F.3d 599, 601 n.3 (7th Cir. 1993) (noting that the FLSA and the Minimum Wage Law are "coextensive"); *Johnson v. Amazon.com Servs. LLC*, 142 F.4th 932, 941 (7th Cir. 2025) (citing Illinois decisions for the proposition that courts "can and should look at federal law to interpret the scope and meaning of the IMWL"). So where the Birks were determined to be individually liable under the FLSA for failure to pay minimum and overtime wages, they also would be liable under the Minimum Wage Law.

The question remains whether individual liability, at least under the Minimum Wage Law, for both Brian Birk and Richard Birk may be determined at summary judgment. Remember that Richard Birk's individual liability under the FLSA was decided not at summary judgment but by a jury. The Motion Plaintiffs argue that two related rules of preclusion—claim preclusion and issue preclusion—make summary judgment the proper stage at which to hold both Birks individually liable under the Minimum Wage Law. Pls.' Mot. at 9–11. The Birks counter by implying that a trial is needed, *see* Defs.' Resp. at 3–4, and by highlighting that claim preclusion requires a final judgment, which has not been entered in this case, *id.* at 4.

The Birks' individual liabilities under the Minimum Wage Law can be decided here at summary judgment, though for a different reason than the Motion Plaintiffs suggest. The Birks correctly identify that claim and issue preclusion both typically require a final judgment, *see Adams v. City of Indianapolis*, 742 F.3d 720, 735–36 (7th Cir. 2014), and the Court has not yet disposed of all claims against all parties,

*see Cleaver v. Elias*, 852 F.2d 266, 267 (7th Cir. 1988); *Alonzi v. Budget Constr. Co.*, 55 F.3d 331, 333 (7th Cir. 1995).

But one variant of issue preclusion applies here: direct estoppel. The doctrine of direct estoppel provides that "a district court may not re-decide factual issues already necessarily determined by a jury." *Franzen v. Ellis Corp.*, 543 F.3d 420, 428 (7th Cir. 2008). So if a jury determines one issue that "necessarily includes" another conclusion, then a court is directly estopped from refusing to award corresponding relief on the second issue. *See id.*; *Freeman v. Chi. Park Dist.*, 189 F.3d 613, 618 (7th Cir. 1999) (reasoning that jury finding on Title VII claim "has equal applicability" to claim under 42 U.S.C. § 1981 because "the methods of proof and elements … are essentially identical" (cleaned up)).[4] A corollary principle exists in the Seventh Amendment of the Constitution, which has the effect of barring district courts from "divid[ing] issues between separate trials in such a way that the same issue is reexamined by different juries." *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1126 (7th Cir. 1999) (cleaned up). Direct estoppel thus treats "[t]he jury's valid resolution of common issues" as "binding at trial of the untried claim, and may forestall the need for any further trial." 18 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 4418 (3d ed. 2025).

---

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

The Court thus enters summary judgment on the individual liabilities of both Brian Birk and Richard Birk under the Minimum Wage Law for failing to pay the Motion Plaintiffs minimum and overtime wages. The Court denies the Motion Plaintiffs' motion for summary judgment on the issue of the Birks' individual liabilities under the IWPCA, so that question must be presented at the second trial.

### B. State Law Damages

As the Motion Plaintiffs correctly identify, each is entitled to the higher of either the federal or the state minimum wage. *Spoerle v. Kraft Foods Glob., Inc.*, 614 F.3d 427, 429 (7th Cir. 2010) (citing 29 U.S.C. § 218(a)). The jury awarded each Motion Plaintiff an amount of minimum wages based on federal law ($7.25 an hour) and an amount of overtime wages that represented 1.5 times that hourly rate. But where Illinois's minimum wage—which varied over the course of the Motion Plaintiffs' employment with the Defendants, *see* 820 ILCS 105/4(a)—was higher than the federal minimum wage, the calculation of minimum and overtime wages (at least those overtime wages based on the minimum-wage rate) under state law thus displaces the jury's federal calculation. Based on the jury award and the Motion Plaintiffs' uncontested evidence of their hours, the Court calculates the converted state law damages as follows:[5]

---

[5]As noted above, the Illinois minimum wage increased over the relevant period. At various points, the minimum wage was $8.25 (July 10, 2010, to December 31, 2019); $9.25 (January 1, 2020, to June 30, 2020); $10.00 (July 1, 2020, to December 31, 2020); and $11.00 (January 1, 2021, to December 31, 2021). The table categorizes each Motion Plaintiffs' minimum wages into buckets based on the prevailing minimum wage at the time that pay period opened, consistent with the Motion Plaintiffs' uncontested calculations. For reasons that will

Minimum Wages

| | Eileen Pruitt | Ryan Klaic | Alan Platt | Stephanie Pichardo | Shian Jno-Lewis |
|---|---|---|---|---|---|
| Jury Award Total Wages (Federal) ($7.25/hour) | $8,482.50 | $22,233.96 | $3,262.50 | $8,845.00 | $15,660.00 |
| Wages 07/10/10–2/18/19 (State) ($8.25/hour) | — | $4,488.00 | $3,712.50 | $10,065.00 | $17,820.00 |
| Wages 02/19/19–12/31/19 (State) ($8.25/hour) | $7,796.25 | $3,366.00 | — | — | — |
| Wages 01/01/20–06/30/20 (State) ($9.25/hour) | $2,081.25 | $1,481.93 | — | — | — |
| Wages 07/01/20–12/31/20 (State) ($10.00/hour) | — | $4,080.00 | — | — | — |
| Wages 01/01/21–12/31/21 (State) ($11.00/hour) | — | $2,992.00 | — | — | — |
| **Total Minimum Wages (State)** | **$9,877.50** | **$16,407.93** | **$3,712.50** | **$10,065.00** | **$17,820.00** |

---

be explained in the text, the Court divides the period for which the Motion Plaintiffs should have earned $8.25 an hour to dates on or before February 18, 2019, and after.

11

Overtime Premiums[6]

| | Eileen Pruitt | Ryan Klaic | Alan Platt | Stephanie Pichardo | Shian Jno-Lewis |
|---|---|---|---|---|---|
| Jury Award Total Wages (Federal) ($7.25) | $2,249.85 | $113,115.90 | $7,912.80 | — | — |
| Wages 07/10/10–2/18/19 (State) ($8.25/hour) | — | $924.00 | $7,957.80 | — | — |
| Wages 02/19/19–12/31/19 (State) ($8.25/hour) | $433.13 | $693.00 | — | — | — |
| Wages 01/01/20–06/30/20 (State) ($9.25/hour) | $161.87 | $518.00 | — | — | — |
| Wages 07/01/20–12/31/20 (State) ($10.00/hour) | — | $840.00 | — | — | — |
| Wages 01/01/21–12/31/21 (State) ($11.00/hour) | — | $616.00 | — | — | — |
| Misc. Overtime Wages On or Before 02/18/19 | $1,742.35 | $23,551.92 | — | — | — |
| Misc. Overtime Wages On or After 02/19/19 | — | $91,485.47 | — | — | — |
| **Total Overtime Wages (State)** | **$2,337.35** | **$118,628.39** | **$7,957.80** | **$0.00** | **$0.00** |

---

[6]As the Motion Plaintiffs also recognize, only those overtime premiums that depend on a minimum wage are adjusted. In other words, if an employee in fact earned a wage that was more than the minimum wage during a pay period, then the overtime premiums would remain the same regardless which minimum wage applied.

R. 343-2, Pls.' Exh. A, Klaic Loan Journals; R. 343-4, Pls.' Exh. C, Platt Loan Journals; R. 343-8, Pls.' Exh. G, Pruitt Damages Calculation; R. 343-9, Pls.' Exh. H, Klaic Damages Calculation; R. 343-10, Pls.' Exh. I, Platt Damages Calculation; R. 343-11, Pls.' Exh. J, Holland Damages Calculation; R. 343-12, Pls.' Exh. K, Jno-Lewis Damages Calculation.

In addition, the Court notes the following adjustments to Klaic's calculations. First, the Court identified nine pay periods (03/18/18–03/31/18, 04/01/18–04/14/18, 05/27/18–06/09/18, 06/10/18–06/23/18, 06/24/18–07/07/18, 09/02/18–09/15/18, 11/11/18–11/24/18, 05/10/20–05/23/20, and 02/14/21–02/27/21) where Klaic's loan-journal entries show payroll entries. *Compare* Pls.' Exh. A, Klaic Loan Journals at 2–6, 13, 20, *with* Pls.' Exh. H, Klaic Damages Calculation at 2. The Motion Plaintiffs acknowledged that no minimum wages should be awarded for any other pay period where an employee was paid an above-minimum-wage rate, so the Court zeroed out Klaic's claims for minimum wage when he likewise was paid an above-minimum-wage rate. Second, because it appeared that Klaic was paid on 02/26/21 instead of 02/28/21, *see* Pls.' Exh. A, Klaic Loan Journals at 20, the Court also adjusted the over-time-premium calculations for the subsequent pay period, *see* Pls.' Exh. H, Klaic Damages Calculation at 2. Third, the Court could not verify Klaic's payroll entry for 03/26/20 ($12,345.22), and it seemed that the entry was an erroneous duplicate of the payroll entry for 03/26/21. *See* Pls.' Exh. A, Klaic Loan Journals at 13, 20. So a minimum-wage award is appropriate for the 03/15/20–03/28/20 pay period. Finally,

13

because these recalculations affected the regular rates for those pay periods, the over-time-premium calculations were also adjusted according to the same formulas.

Two more measures of damages remain, and the Court proceeds next to the underpayment penalty. 820 ILCS 105/12. Courts view the underpayment penalty as mandatory. *See Schneider v. Cornerstone Pints, Inc.*, 2016 WL 278813, at \*1 (N.D. Ill. Jan. 15, 2016). The parties have some disagreement about whether the underpayment penalty is a monthly 2% or instead 5% rate, Pls.' Mot. at 13–19; Defs.' Resp. at 5, though the Motion Plaintiffs appear to concede in reply that a 2% penalty applies up until the date that the statute was amended, *see* R. 361, Pls.' Reply at 12–14.[7]

The Court will apply the rate that was in effect during the month when wages were unpaid. The proper mode of analysis would be to determine whether an amendment has retroactive effect by inquiring whether the amendment is substantive or procedural. *See Perry v. Dep't of Fin. & Pro. Regul.*, 106 N.E.3d 1016, 1025–28 (Ill. 2018). If an amendment is only procedural in nature—as many changes to remedies are characterized, *see Hogan v. Bleeker*, 193 N.E.2d 844, 847 (Ill. 1963)—then the statutory amendment presumptively has retroactive effect because of the Illinois legislature's default intent. *See Perry*, 106 N.E.3d at 1026–27 (citing Statute on Statutes, 5 ILCS 70/4). And it is not immediately clear whether the 2019 amendment to the

---

[7]The parties dispute the effect of a corresponding amendment to the Plaintiffs' claims under the Wage Collection Act, but the Minimum Wage Law was similarly amended, with the increased 5% penalty taking effect on February 19, 2019. Lifting Up Illinois Working Families Act, Pub. Act 101-1 (2019). *Compare* 820 ILCS 105/12 (2006), *with* 820 ILCS 105/12 (2019).

Minimum Wage Law is substantive or procedural. *Compare Dardeen v. Heartland Manor, Inc.*, 710 N.E.2d 827, 832 (Ill. 1999) (holding that repeal of treble-damages provision could apply retroactively), *with Theodosis v. Keeshin Motor Express Co.*, 92 N.E.2d 794, 802 (Ill. App. Ct. 1950) ("A retroactive increase in the amount recoverable against a defendant is the equivalent of imposing a new liability upon defendant."), *and Thomas v. Weatherguard Constr. Co.*, 42 N.E.3d 21, 39 (Ill. App. Ct. 2015) (holding that amendment to Wage Collection Act imposing initial 2% underpayment penalty was substantive and thus not retroactive). Without the benefit of any analysis from the Motion Plaintiffs, there is no reason either to view the Wage Collection Act differently than the Minimum Wage Law or to determine whether the 2019 amendment to the Minimum Wage Law was substantive or procedural.

The Birks also contend that the underpayment penalty is imposed only for periods of underpayment up until a worker's employment ends. Defs.' Resp. at 5. But the Illinois Supreme Court has emphasized the Minimum Wage Law's "deterrent effects," particularly in light of the statutory requirement that the penalty be paid "for each month following the date of payment during which such underpayments remain unpaid." *Mercado v. S&C Elec. Co.*, 267 N.E.3d 891, 903–04 (Ill. 2025) (second quoting 820 ILCS 105/12(a)). This penalty accrual depends only on "the date that the employee should have been paid" and not on when employment ended or suit was filed. *See id.*

The Court now addresses treble damages. The Motion Plaintiffs imply that treble damages are mandatory under the Minimum Wage Law. Pls.' Mot. at 12–18

(describing treble damages as entitlement). The Birks offer no other construction of the state law, which states that "the employee may recover in a civil action treble the amount of any such underpayments together with costs and such reasonable attorney's fees …." 820 ILCS 105/12(a).

Treble damages are appropriate in this case for two reasons. First, the Birks neither suggest that treble damages are discretionary nor argue, to the extent that treble damages *are* discretionary, any basis for a lesser award of this form of relief. *See generally* Defs.' Resp.; *see also* R. 297, Proposed Pretrial Order at 12–15 (listing the Birks' only pretrial objection to damages as based on calculation). The Birks' failure to respond to the Motion Plaintiffs' request for treble damages means they have waived any challenge. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument … results in waiver."). Second, there is reason to believe that treble damages are favored under the Minimum Wage Law, even if those damages are not mandatory. Payments that do not include treble damages "d[o] not *fully* compensate the plaintiffs for their statutory damages." *Mercado*, 267 N.E.3d at 903–04 (emphasis in original) (holding that employees are "entitled by law to statutory damages" because of statute's "deterrent effects").

Treble damages, however, are limited to only some pay periods. This is for the same reason as the underpayment penalty: the Motion Plaintiffs concede that a similar amendment to the Wage Collection Act has only prospective effect, so the Court will proceed the same way with the amendment to the Minimum Wage Law. And the issue here is also incapable of clear resolution. *See Meadows v. NCR Corp.*, 2021 WL

16

12284732, at *2 (N.D. Ill. July 9, 2021) (applying treble-damages provision only to subset of unpaid wages owed for work on or after February 19, 2019). The Court also notes that treble damages are awarded *in lieu* of, and not in addition to, the unpaid minimum and overtime wages. *See* Lifting Up Illinois Working Families Act, Pub. Act 101-1 (2019) (replacing "the amount of any such underpayments" with "treble the amount of any such underpayments").

### C. Default Judgment Against Smart Mortgage

The Motion Plaintiffs lastly argue that default judgment should be entered against Smart Mortgage. Pls.' Mot. at 19–20. Although counsel has entered an appearance to represent the Birks and Smart Mortgage, there is no argument against the extension of default liability, nor is there a contention that the earlier entry of default should be set aside under Civil Rule 55(c). *See generally* Defs.' Resp. The Court enters a default order but not default final judgment against Smart Mortgage. *See Dimmitt & Owens Fin., Inc. v. United States*, 787 F.2d 1186, 1189 (7th Cir. 1986) (distinguishing default order from final judgment); *C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1206 (7th Cir. 1984) (same). The Court previously entered default against Smart Mortgage for failing to appear, R. 279, 03/28/25 Minute Entry, and now that damages have been determined on the Motion Plaintiffs' minimum and overtime wage claims, Smart Mortgage's default liability extends to the Motion Plaintiffs' specific damages. Default final judgment, however, still remains inappropriate for the same reason final judgment generally is inappropriate: many claims still are unresolved, and litigation is ongoing.

17

## IV. Conclusion

For the reasons explained in this Opinion, the Court grants in part the Motion Plaintiffs' motion, R. 343. The jury previously determined that Brian Birk and Richard Birk are individually liable under the FLSA, and the Court now concludes that the same conclusion is appropriate under Minimum Wage Law. Because each Motion Plaintiff is entitled to the higher of the federal or state minimum wages, *Spoerle*, 614 F.3d at 429, the awards under state law displace the jury awards under federal law. The cumulative tally of damages thus is as follows:

- Eileen Pruitt was not paid $9,877.50 in state minimum wages and $2,337.35 in state overtime wages, so she is entitled to $36,644.55 in treble damages.[8] Pruitt is additionally owed $610.74 for each month she has not been paid the wages she is due. Pruitt ended her employment on February 20, 2020, *see* Defs' Resp. at 5; Pls.' Exh. G, Pruitt Damages Calculation, so the Motion Plaintiffs calculate 66 months, as of August 2025, that she has not been paid.[9] It is now 73 months, so Pruitt is owed $44,584.02 in underpayment penalties. And Pruitt still is due $7,000.00 in liquidated damages under the FLSA, as awarded by the jury. In total, Pruitt currently is owed $88,288.57.

---

[8]The treble damages displace the actual amounts owed. *See* 820 ILCS 105/12(a).

[9]The Court proceeds with the Motion Plaintiffs' decision to calculate penalties from the date of each employee's departure. Because the Motion Plaintiffs do not do so, the Court does not perform the additional calculations of each penalty dating to each individual date of payment. *See* Pls.' Reply at 13.

- Ryan Klaic was not paid $16,407.93 in state minimum wages and $118,628.39 in state overtime wages. Only part of those wages are eligible to be trebled, so Klaic is owed $4,488.00 in minimum wages, $24,475.92 in overtime wages, and $318,217.20 in trebled minimum and overtime wages. Klaic stopped working for Smart Mortgage on August 6, 2021, *see* Defs.' Resp. at 5; Pls.' Exh. H, Klaic Damages Calculation, so he has not been paid properly for 55 months. Because Klaic is owed $6,751.81 per month in underpayment penalties, his total under-payment-penalty amount currently is $371,349.55. The jury awarded Klaic $75,000.00 in liquidated damages under the FLSA. In total, Klaic currently is owed $793,530.67.

- Alan Platt is owed $3,712.50 in state minimum wages and $7,957.80 in state overtime wages. His wages all were due before the Minimum Wage Law was amended, so he cannot receive treble damages. Platt ended his employment on January 1, 2019, *see* Defs.' Resp. at 5; Pls.' Exh. I, Platt Damages Calculation, so the first two months' underpayment penalties accrue at 2% ($233.40). The next 84 months accrue at 5% ($583.51), so Platt to date is owed $49.481.64 in underpayment penalties. The jury awarded Platt $8,000.00 in liquidated dam-ages under the FLSA. In total, Platt currently is owed $69,151.94.

- Stephanie Pichardo is owed $10,065.00 in minimum wages, which are not tre-bled because they were due before the Minimum Wage Law was amended. She ended her employment on December 31, 2018, *see* Defs.' Resp. at 5; Pls.' Exh. J, Holland Damages Calculation, so the first two months' underpayment

19

penalties accrue at 2% ($201.30). The next 85 months accrue at 5% ($503.25), so her underpayment penalties to date are $43,178.85. The jury awarded Pichardo $4,000.00 in liquidated damages under the FLSA. In total, Pichardo currently is owed $57,243.85.

- Shian Jno-Lewis is owed $17,820.00 in minimum wages, which are not trebled because they were due before the Minimum Wage Law was amended. She ended her employment on December 31, 2018, *see* Defs.' Resp. at 5; Pls.' Exh. K, Jno-Lewis Damages Calculation, so the first two months' underpayment penalties accrue at 2% ($356.40). The next 85 months accrue at 5% ($891.00), so her underpayment penalties to date are $76,447.80. The jury awarded Jno-Lewis $6,000.00 in liquidated damages under the FLSA. In total, Jno-Lewis currently is owed $100,267.80.

As explained earlier, the Court denies the Motion Plaintiffs' motion, R. 343, on the question of the Birks' individual liabilities under the Wage Collection Act. Because the standard is different than individual liability under the FLSA or the Minimum Wage Law, the Birks' individual liabilities (and thus the damages, if any, owed to the Motion Plaintiffs) must be determined at the second trial.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 31, 2026